NEW-YORK,
May, 1805.

W. E. Sheffield
v.
James Watson.

## William E. Sheffield *against* James Watson.

ASSUMPSIT for work, labour, and materials in making two drafts and models for the frigate *Adams*, at the defendant's request. There being no dispute about the facts, a verdict was taken by consent, subject to the opinion of the court, on the following case.

The defendant, who is publickly known as the navy agent for the general government, in consequence of orders to have the *Adams* built, wrote to the plaintiff a letter, on the subject of the present suit, couched in these words.

A govern-
ment agent,
though known
to be such, con-
tracting for
things for the
use of govern-
ment, will be
personally
liable on his
contract, unless
he make it in

NEW-YORK,
May, 1805.

W. E. Sheffield
v.
James Watson.

his official
character, on
account of go-
vernment, and
the party con-
tracted with,
appear to have
looked to go-
vernment alone
for compensa-
tion.

*July* 8, 1798.

" SIR,

" I pray you to make a draft of the ship as soon as possible,
" for which you shall have the usual allowance from

" Your humble servant,

" JAMES WATSON.

" *To Mr. Sheffield.*"

The plaintiff, in pursuance of this, made a draft and model on
a scale of 108 feet; but directions having been given to the de-
fendant to construct the frigate on larger dimensions, he ordered
another draft and model, which were accordingly furnished by the
defendant, who shortly after, in conjunction with one *John Jackson*,
entered into a written contract with the defendant for building
the ship. In this agreement, *Watson* styled himself " agent for,
" and in behalf of the *United States.*"

In ship-building, modeling and drafting are distinct charges,
and on the present occasion, constituted no part of the demand
against government, they employing a regular draftsman of their
own, whose business it is to furnish drafts and models for govern-
ment ships, though, from some particular circumstances, he had
not done it for the *Adams*.

Upon these facts it was submitted to the court to determine
whether the plaintiff was entitled to recover for one or two drafts
and models, or whether he was entitled to recover at all? If for
the two, the verdict to be entered for 300 dollars; if for one only,
for 150 dollars; but if not at all, then to be entered for the de-
fendant.

*Blake* for the plaintiff. This case will turn on the intent of the
parties.—Whether *Sheffield* considered the defendant as acting in
his individual capacity, or as agent for the *United States*. The
intendment of law would naturally view him in the first of these
lights, for whoever contracts for the labour of another, assumes a
*primâ facie* responsibility of payment. This alone would be suf-
ficient to induce in the plaintiff a belief, that he was to look to
the defendant for his money. He would perform the services
required, under that impression, and with that intent. This,
therefore, is to be the rule of construction to ascertain who, by
the plaintiff was contemplated as his pay-master. To shew this
intent of the parties ought to govern, 1 *Pow.* on *Cont.* 243. The
fact relied on to destroy this general responsibility, and establish

the contract to have been entered into with another intent, is that the defendant was known to be the agent of the *United States*. Against this, the letter of the defendant speaks a plain language ; and for the very services the plaintiff rendered, government have an officer of their own and could not, therefore, be resorted to by us.

*Hopkins* and *Harison*, contra. The question is, whether a known agent of the *United States* acting in a line palpably for the service of the public, shall be responsible in his individual character, on the contracts he may thus make for government. The contrary is firmly settled. 1 *East.* 135,* 579.† 1 *D.* & *E.* 172,‡ 674.§ If the plaintiff is to recover, the defendant must lose the money. The agent of even an individual, if known to be acting for his principal, does not incur any liability. *A fortiori* the agent of government. No surprise is pretended ; the plaintiff contracted with his eyes open, and to make a goverment agent responsible, there must be clear unambiguous circumstances to shew he contracted in his private capacity.

*Caines* in reply. That an agent may bind himself by contracts, made for his principal is admitted. In addition to the facts already relied on to evince that was the case in the present instance, the conduct of the parties themselves, when intending it to be otherwise, may be referred to. In contracting for building the frigate, Mr. *Watson* describes himself as agent, for and in behalf of the *United States*. When therefore he does not so engage, he must mean to personally undertake. There is a case in *Strange*⁕ where a cashier of a public company, was held answerable in his private capacity, for a bill accepted by him in his own name though directed to him as cashier, and drawn upon the funds of the company. Words tantamount to those used in this letter have been ruled to create an individual responsibility. In general *Burgoyne's* case cited in *Macbeath* v. *Haldiman*, the expressions were, that the plaintiff " should be paid at the same rate as " the provost marshal under general *Howe*," and they were held to work a personal liability. Whenever the rule contended for on the other side has been allowed to operate, the terms of the contract have shown that it was entered into with a reference to government. In *Macbeath* v. *Haldiman*, the plaintiff's accounts were made out " government debtor ;" and the whole of the correspondence stated in the report, manifests the same idea. So in *Unwir* v. *Woolsey*, the charter-party was expressly "for and on ac- " count of government." All the cases referred to, have the

* *Myrtle* v. *Beaver*
† *Rice* v. *Chute*
‡ *Macbeath.* v. *Haldiman.* v. || *Unwin* v. *Woolsey.*

⁕ *Thomas* v. *Bishop*, 2 *Stra.* 955.

NEW-YORK, same, or some other similar ingredient, distinguishing them from
May, 1805. the present. Under a system so widely extended as ours, to turn over
W. E Sheffield to the administration, every man who might furnish that which
v. the country requires, would be ruinous, and impede, if not totally
James Watson. obstruct the public service. Suppose the rations of an army de-
livered to a commissary, must the recourse be to government
alone ? The defendant in giving directions for the models, either
acted under the orders of government, or he did not. In the first
case, he either has received, or will receive the amount of the
present contest ; if so, he suffers nothing by the recovery. In
the second, he must have intended to act for himself and is there-
fore liable on his contract.

*Per curiam*, delivered by LIVINGSTON, J. It is not enough
the plaintiff knew the defendant to be navy agent, and that
the frigate, whose model he was to make, was to be a public
ship of war. Before we send him to government for redress,
it should appear, as well that *Watson* contracted in his official
character, and on account of the *United States*, as that *Shef-
field* gave credit, and intended to look to the government alone
for compensation. No one would do any thing for a public
agent, were he compelled for every demand, however small, to
send his account to the seat of government, or to petition con-
gress for relief. The expense and delay, would, in many cases,
be greater than the sum due might be worth. Never before was
it insisted, that every carpenter, ship-chandler, &c. who had sup-
plied materials, or bestowed labor on a public vessel, had no re-
course against the person employing him. The consequence
would be, either an unwillingness to work for the public, or an
exorbitant price would be asked, as an indemnity for the incon-
venience of applying to the legislature, or some distant office, for
a settlement. It is more reasonable, that an agent who receives
a salary, or a commission should be personally answerable to all
who are employed in his department. He trusts government.
His acceptance of the office is voluntary. He is compensated
for his services ; and, so long as he acts within his instructions,
he runs no risk of having any proper account disallowed. In or-
dinary cases he will not be alarmed at a responsibility, which,
upon great occasions, such as provisioning an army or the like,
may be avoided, by taking care so to model the contract, as to
leave no doubt that the party was willing, and intended to look,
not to him, but to the public. Where this precaution is omitted,

he ought to be liable for every thing done at his request, although his character be known, and that the services rendered, are on public account. Here, on the contrary, is something very like an express undertaking, on the part of *Watson*, to pay. For, what other construction can be put on the conclusion of his letter, in which he declares that the plaintiff " shall have the usual al- " lowance from his humble servant?" His public character is not brought to view, nor is the plaintiff referred to government for satisfaction. It must have been upon reasoning like this, that the lord Chancellor, assisted by two of the judges of the king's bench, proceeded, in the case of *Horsley* v. *Bell*. 1 *Bro. Ch. Rep.* 101. *in notis*. They considered the commissioners named in an act of parliament for carrying on a certain navigation, per-sonally liable to the undertaker, although he knew they were ex-ercising a public trust, and they had signed the several orders in that capacity.

It is not intended to shake any of the English authorities on this point. None are to be found in which the party was de-nied a remedy against his immediate employer, but on the prin-ciples here recognised. In *Melchart* & *others* v. *Halsey* & *others*, 3 *Wils.* 149, lord *Mansfield*, thought, from the circumstances dis-closed (but what they were does not appear) that the forage and provisions furnished the British troops were " upon the public " faith and credit of government," and therefore nonsuited the plaintiff. So in *Mackbeath* v. *Haldiman* the plaintiff had made " Government debtor for sundries supplied by order of the lieutenant " governor," and on this circumstance the court laid great stress. The supreme court of the *United States* in *Hodgson* v. *Dexter*, 1 *Cranch* 345, regarded the contract as made " with a view en- " tirely to government." When this appears, it will be unjust to charge the officer, but as the contrary may fairly be inferred as the understanding and agreement between the parties, the plain-tiff must have judgment for 300 dollars, and this is the unani-mous opinion of the court.