State v. Houser.

---

THE STATE, Respondent, v. HOUSER, Appellant.

1. The St. Louis criminal court has power, of its own motion, to order a removal of a cause to the St. Louis circuit court on the ground that the judge of the said criminal court has been of counsel for the defendant; the local act of December 11, 1855, (R. C. 1855, p. 1591,) is confined to changes of venue made upon the application of the defendant.

2. Where an instruction given by the court could have had no influence on the verdict—there being no evidence upon which to ground it—an inquiry into its propriety as an abstract proposition of law will not be held obligatory on the supreme court.

3. Where it is sought to show the presence of the defendant at the time and place of the homicide by showing the identity of a shirt, with marks of blood upon it, found at the place of the homicide on the morning after its commission, with a shirt worn by the defendant on the day of the homicide, the fact, testified to by the person, a relative of defendant, at whose house the homicide was committed, that she gave the shirt up to the brother of the defendant on his demand, is evidence tending to show the real opinion of the witness as to the question of identity and ownership of the shirt— she having stated that when she gave the shirt to the brother she told him that she did not think it belonged to the accused.

4. The fact that a slung-shot was discovered in the pocket of a person on trial for a capital crime when about to be brought into court to be present at the rendition of the verdict is admissible in evidence against the accused on a second trial.

*Appeal from St. Louis Circuit Court.*

This was an indictment against Stephen H. Houser for the murder, in Gasconade county, on the 25th of July, 1853, of William D. Farris. The indictment was found at the September term, 1856, of the Gasconade circuit cout. A change of venue was taken to the St. Louis criminal court. Houser was convicted in the criminal court, Lackland, Judge, presiding, and the judgment against him was reversed in the supreme court. (See — Mo. ——.) Afterwards, at the election held in August, 1857, Judge Lackland was transferred to the St. Louis circuit court, and Henry A. Clover, counsel for Houser on the former trial, was elected judge of the criminal court; and the court, of its own motion, made an order removing the cause to the St. Louis circuit court on the ground that Judge Clover, of the criminal court, had been of counsel for Houser.

*U. & J. T. Wright,* for appellant.

I. The circuit court had no jurisdiction of the cause. Its judgment is void.

II. The court refused proper and legal instructions, and gave no equivalents. The case turned on the identity and ownership of the shirt. The court instructed the jury erroneously on the law of self-defence. (19 Mo. 506.)

III. The court erred in permitting evidence to be introduced as to the slung-shot four years after the homicide.

*Mauro,* (circuit attorney,) for the State.

I. The judge of the criminal court properly made the order on his own motion to change the venue. (R. C. 1855, p. 539, § 41, p. 1184, § 21, p. 1591; Jim v. State, 3 Mo. 147; Gates v. State, 20 Mo. 400.)

II. The testimony with respect to the slung-shot was ad-

missible in evidence. (Rosc. C. Ev. 17; Fanny v. State, 14 Mo. 390; People v. Rathburn, 21 Wend. 509; 11 Georg. 123; Whart. C. L. 332.) The instructions on the subject of self-defence were proper. (Rosc. Crim. Ev. 589; 1 Russ. on Crimes, 669; Whart. Hom. 219; 2 Com. 484; 12 Gratt. 730; 17 Georg. 484; 4 Dev. & Batt. 491.) The instruction complained of received the sanction of this court in State v. Shoultz, 25 Mo. 153.

NAPTON, Judge, delivered the opinion of the court.

The first point taken in this case is, that the circuit court of St. Louis had no jurisdiction; that the change of venue ordered by the criminal court was contrary to the express terms of the act which regulates changes of venue in this county. The act in relation to changes of venue from the criminal court of St. Louis county declares that " no change of venue shall hereafter be allowed from the St. Louis criminal court except in the mode pointed out in the succeeding section of that act." The next section provides that " any party desiring a change of venue from said criminal court on account of any of the causes provided by law, shall present his petition to the judge of the St. Louis court of common pleas, in writing, verified by affidavit," &c. (R. C. 1855, p. 1591.) The change of venue in this case was not made upon the application of either party, the State or the defendant; but was made by the judge upon his own motion, for the reason that he had been counsel for the prisoner. The forty-first section of the general act concerning courts (R. C. 1855, p. 539) declares that " no judge or justice of any court shall sit on the trial of any cause or proceeding in which he is interested, or related to either party, or shall have been of counsel; but it shall be the duty of the judge to try said cause or proceeding by the consent of both parties thereto." The sixteenth section of the fifth article of the practice act in criminal cases provides that, where the circuit judge has been counsel in a criminal case, the case

shall be removed by the order of the court or judge to another circuit. The twenty-first section provides, that whenever it shall be within the knowledge of a court that facts exist which would entitle the defendant, on his application, to have the cause removed, the court may make the order without any application. The forty-first section of this act provides that sections sixteen, seventeen and eighteen shall not apply to St. Louis county, but that changes of venue shall in that court be governed by the special law. The special act regulating changes of venue in St. Louis county is, in our opinion, confined to such changes of venue as are made upon the application of the defendant, and was not designed to affect the right or duty of the criminal court to order a change where the judge of that court had been of counsel. The language of the second section of the act, as well as as its manifest intent, concur in establishing this interpretation. The sixteenth section of the general practice act in criminal cases recognizes the impropriety of allowing a judge to try a criminal cause in which he has acted as counsel, and makes provision for the removal of such cases arising anywhere throughout the state except in St. Louis county. This county was expressly excepted from its operation, manifestly for the reason that all original jurisdiction over criminal causes was taken from the circuit court of this county and transferred to a special tribunal. The provision was therefore inapplicable to St. Louis county, had there been no express words of exception in the act. It was probably through mere inadvertence that the special act regulating changes of venue in St. Louis county omitted any provision of the character contained in the sixteenth section of the general act, but the effect of that omission is only to throw the criminal court here upon the general provision contained in the act regulating courts, which we have referred to above, which, taken in connection with the twenty-first section of the criminal practice act and with the fifteenth section of the act which establishes the court (R. C. p. 1590)

State v. Houser.

authorized that court to send the case to the circuit court of St. Louis. We are therefore of opinion that the circuit court had jurisdiction to try this case.

The instructions upon the trial explanatory of the nature of the circumstantial evidence and of homicide in self-defence were objected to on the trial, and it is now insisted that the instruction relative to homicide *se defendendo* was erroneous, and that the one concerning circumstantial evidence was not sufficiently explicit and full, and should have been accompanied with the instruction asked on that point by the defence.

The court instructed the jury that in order to convict the defendant upon circumstantial evidence alone, " the circumstances tending to show his guilt should be established beyond a rational doubt by the evidence in the cause, and, when established, should point so strongly to the guilt of defendant as to exclude every other reasonable hypothesis." On behalf of the defendant the additional instruction was asked, " that all the facts established in evidence should be consistent with the idea of the guilt of the defendant." It is not perceived that there is any material difference between the instruction given by the court and the one asked by the defendant. If all the established facts are utterly inconsistent with the defendant's innocence, they must necessarily support the hypothesis of his guilt. If any one fact is found to be irreconcilable with the supposition of the defendant's guilt, it is impossible that all the facts should exclude the possibility of his innocence. The form in which the instruction is put by the court seems to be more directly pointed to the difficulties of the case, and better adapted to put the jury on their guard against a hasty or unwarranted conclusion unfavorable to the defendant than the one desired by the defence ; for it does not appear that there was any one particular and prominent fact among the circumstances of the case which was supposed to be entirely inconsistent with the hypothesis of the defendant's guilt. There are cases in which a controverted fact of this character presents itself, and in which the

16—VOL. XXVIII.

attention of the jury ought to be called to the rule of evidence which was asked in this case ; but there was nothing of the kind in the testimony given on this trial, and the court expounded the law applicable to the case as favorably to the defendant as it would have been if given in the words and form desired, telling the jury that if they could reconcile all the facts proved to them with any other hypothesis whatever than that of the defendant's guilt, they must acquit him.

In relation to the instruction concerning homicide in self-defence, it is sufficient to say that it was a mere abstraction, and any explanation of this branch of the law might, without error, have been omitted. There was no evidence on the subject, and, proceeding upon mere inferential reasoning on the facts in evidence, there was hardly any room for a rational conjecture that the case was one of self-defence. There was no eye-witness to the homicide, but the body of the deceased was found with six wounds from a knife in his left side and two in his right side, and with his throat cut to the bone, or, as one witness expresses it, " from ear to ear." No weapon of any kind was found upon or near the person of the deceased, and it was not the interest of the person who committed the homicide, or of the witness who first saw the body after the homicide, to have removed such a weapon, if any had been there. The defendant had been seen early the ensuing day a few miles from the place of the homicide, apparently unhurt, with no external marks of violence upon him, and making his escape with secrecy and celerity. These facts could not consist with the supposition of self-defence. The instruction concerning self-defence given by the court in this case seems to be in substance and almost in terms the same which was given in the case of Shoultz, 25 Mo. 153, in which latter case it seems quite as inapplicable as it was in this. The instruction in either case could have had no influence on the verdict, and we therefore deem it unnecessary to express any opinion of its propriety as an abstract proposition of law.

The refusal of the court to give the first instruction asked

by the defendant is also assigned for error.    That instruction is as follows: " The jury are instructed that the statement made by Mrs. French, that she gave the shirt found upon the loom to Robert Houser, is not any legal evidence that the shirt belonged to defendant."    That the acts and words of one person are no evidence against another, unless some complicity is established between them, is a truism in the law of evidence; and if this was the proposition designed to be asserted in the instruction, it might with propriety have been given.    The examination of the witness (Mrs. French) in relation to the shirt found in the room where the homicide was committed, was directed to the identification of the shirt as the one worn by the defendant on the day when the disturbances occurred at Luster's.    The witness was a relative of the defendant, and at her house the homicide occurred. She stated, upon her examination, that Robert Houser, the brother of the defendant, applied to her for the shirt, saying that *if* it was his brother's shirt he wanted it.    She (witness) stated that she told Robert Houser that, in her opinion, it was not his brother's shirt, and she further stated that Robert Houser also said he did not think that the shirt was his brother's; but the witness, upon this application, gave up the shirt to Robert Houser.    This witness was competent to identify the shirt, and it became material to ascertain what her opinion was on that subject.    She said her opinion was that the shirt did not belong to the defendant, although, in her opinion, it resembled the defendant's shirts more than those of her brother, and although one of the sleeves was torn and in that respect corresponded with the defendant's, whose shirt sleeve had, according to other testimony, been torn in a scuffle at Luster's on the day of the homicide. Although the witnesses expressed the opinion that the shirt was not the defendant's, the fact she testified to was that she gave the shirt to the defendant's brother, who applied to her for it as the defendant's shirt.    The testimony is admitted to be competent to account for the nonproduction of the shirt by the State.    We think it was always competent to show the

real opinion of the witness on the question of identity and ownership. That belief it was the province of the jury to ascertain not only from the witness' words but from her acts. The instruction therefore, in the form asked, was rightly refused. It may be observed, in this connection, that the principal if not the only importance, which could attach to the testimony touching the identity of the shirt, was to establish the defendant's presence at the time and place of the homicide. Of this fact there was abundant other testimony of a circumstantial character, corroborated by the acknowledgments of the defendant, which, upon the most favorable interpretation, must be understood as explicit admissions of this fact.

The evidence, admitted, that the prisoner, whilst passing from the jail on a former trial, was found in possession of a slung-shot, is also objected to as incompetent. Flight, openly or secretly, following immediately on the commission of an act, has always been regarded as legitimate proof of guilt. Escapes, or attempts to escape, after incarceration, are not entitled to the same weight, and may be perfectly consistent with innocence. But all these circumstances have been considered as facts proper for the consideration of the jury. In Fanning's case, 14 Mo. 390, it was decided that the State could prove attempts of the prisoner to escape, three years after the alleged commission of the offence, with a false key. If a *slung-shot* is used for this purpose, that fact is equally important with the possession of a false key. Whether the slung-shot was made and concealed with a view to effect an escape, or for defensive or offensive purposes in combats occurring in the place of confinement, was a matter for the jury. There was testimony in this case on this point and the circumstance was open to comment.

All the judges concurring, the motion to stay execution is overruled.

Scott, Judge. It would have been no error had the court given the instruction in relation to the prisoner's brother taking away the shirt found at the house where the homicide

was committed.    But as the instruction was made to assume the aspect of a comment on the evidence—that one fact did not warrant the inference of the existence of another—and as the instruction asked was a truism about which men competent to serve on a jury could not be deceived nor misled, its refusal could not have prejudiced the prisoner.    The refusal of the instruction amounted to no direction that the taking away of the shirt by his brother was evidence against the prisoner.

As to the evidence in relation to the slung-shot, it may be remarked that, although evidence may be admitted which might have been excluded, yet, if the evidence upon the whole did not prejudice the cause against which it was received in the opinion of this court, it will not reverse the judgment.    I am not prepared to say that, under all the circumstances, the prisoner was prejudiced by the admission of this evidence.