## UNITED STATES *v.* ANGELL.

*(Circuit Court, D. New Hampshire.   March, 1881.)*

1. CRIMINAL LAW PRACTICE—EXAMINATION OF WITNESS—LEADING QUESTIONS.

    A leading question is one which suggests or leads to the answer, and which embodies a material fact, and can be directly answered by yes or no. Such a question cannot be put on main examination even to contradict another witness.

2. EVIDENCE—DECLARATIONS OF DEFENDANT—RES GESTÆ.

    Declarations accompanying and explaining the *res gestæ* may be proved, but such declarations are not admissible as part of the *res gestæ* unless they in some way elucidate or tend to characterize the act which they accompany, or may derive a degree of credit from the fact itself. If the declaration offered in evidence depends entirely for its effect on the credit of the person making it, it is inadmissible.

3. TESTIMONY AT FORMER TRIAL—WITNESS OUT OF JURISDICTION.

    Where a witness who testified at the preliminary examination of the defendant upon the same charge is living, but has gone out of and beyond the jurisdiction of the court, evidence of what he said on the former trial is inadmissible in a criminal prosecution.

4. SAME—CONSTITUTIONAL GUARANTY.

    The constitutional guaranty that the accused shall enjoy the right to be confronted with the witnesses against him, (Am. Const. U. S. art. 6,) is without exception, and if the accused has this right it must be mutual, and exist on the part of the government.

5. EVIDENCE—RECEIPT FOR LICENSE TAX.

    A receipt for a license tax is not retroactive, and cannot be admitted in evidence on a charge for selling spirituous liquors by retail during a period of time prior to its date.

6. CARRYING ON BUSINESS WITHOUT A LICENSE.

    Under the revenue law (14 St. at Large, 112) a party is liable for carrying on a trade, business, or profession without payment of a special tax imposed by law, not only for the amount of the tax, but also to imprisonment for a term not exceeding two years, or a fine not exceeding $500, or both, and the payment of the tax will not relieve from punishment by fine and imprisonment.

7. RETAILER OF LIQUOR—AGENCY—UNDISCLOSED PRINCIPAL.

Where defendant purchased rum in his own name, and had the same billed to him in his own name, and dealt it out from time to time as called for, he is a retail dealer in liquor, notwithstanding the money for the purchase of said liquor was advanced to him by others, and he procured and dealt out the liquor without profit to himself.

8. SELLING AFTER LICENSE EXPIRES.

If a party having a license to retail liquors sells or offers to sell after his license expires, it is a violation of the law for which he is liable. When the period stated in a license issued to exercise a business for a specific time expires, the license expires, no matter what stock he may still have on hand.

9. INSTRUCTIONS—RETAIL DEALER, WHO IS—INSTRUCTION OF COURT.

Where the court, in instructing the jury as to what constituted a retail dealer, used the language of the statute, *held*, that the instruction was proper.

10. TRIAL BY JURY—RIGHTS OF ACCUSED—ARREST OF JUDGMENT.

Where the jury were informed of the nature of the accusation against the defendant, and the indictment was read to the jury, and was in court during the trial and easily accessible to the jury, the mere fact that, through inadvertence, the indictment was not sent with other papers to the room of the jury while they were deliberating, is not of itself, where no injury is shown to have resulted to the defendant, a ground for arrest of judgment.

On motion to set aside the verdict, and on motion in arrest of judgment.

This was an indictment found by the grand jury of this district, at the term of this court held at Exeter, October 8, 1868, charging the respondent with exercising and carrying on the trade and business of a retail dealer in liquors on the first day of May, 1867, and from that day to the first day of January, 1868, without paying the special tax in such cases by law required. To this indictment the respondent pleaded not guilty, and the government joined the issue.

(1) In order to sustain the indictment Amos D. Carnes was offered as a witness on the part of the government, who testified that some time in June, 1867, he was at the place of business of the respondent, in Sunapee, and while he was there Stephen H. Heselton and Melvin S. George came there,—the said Heselton bringing with him a scraper which he had borrowed of respondent, and for the use of which the respondent charged him 25 cents, which Heselton paid; that afterwards said Heselton called for something to drink; that the respondent went into a back room and drew some liquor which smelt like rum, and which Heselton and George drank; and that Heselton then paid respondent some money, but the witness could not tell what it was, except that it was scrip, and that respondent did not give back any change. To contradict the testimony of Carnes, the respondent offered said Heselton as a witness, to whom the counsel for the respondent put the following question: "Did you drink any liquor at

Mr. Angell's that day?" referring to the time Carnes testified he saw Heselton and George drink at the respondent's. To the question the counsel for the government objected, on the ground that the same was leading. The court sustained the objection; to which ruling the respondent excepted.

(2) In order to explain the fact that a barrel partially filled with Medford or new rum was found on the premises of the respondent on the twenty-third day of July, 1867, when a search was made of the premises of the respondent, and to show that said rum had been procured by the respondent as the agent of certain other persons who had clubbed together to purchase said rum for haying, and not to sell for himself, the respondent offered Daniel S. Currier as a witness, and proposed to prove by him, among other facts, "that said Currier applied to the respondent as his agent to procure some rum to do his haying with, and at that time the respondent told him that a club was being formed to send for a barrel of rum, and that he (the witness) might join them." To this testimony the counsel of the government objected, on the ground that it was incompetent because it was proposed to prove the declarations of the respondent at the time of the negotiation. The court sustained the objection and ruled out the testimony; to which ruling the respondent excepted.

(3) It was duly shown to the court that one Philip Belloir, an important witness for the respondent in this case, and who testified before the United States commissioner on the examination of the respondent for the offence charged in the indictment in this case, and was cross-examined by the counsel for the government, had, since the last term of the court, departed from and is still beyond the jurisdiction of the United States, and in parts unknown; for which reason, and because he was unable to procure the personal attendance and testimony of said Belloir on the trial, the respondent offered to read the notes of the testimony of said Belloir, taken by said commissioner on said examination; the counsel for the government admitting that said commissioner would, if he were present, testify that he intended to take, and believed he had taken, the whole and substance of the testimony of said Belloir given on said examination, and agreeing that said notes of said testimony might be read to the jury if the said testimony was competent on this trial, if proved in any legal manner. But he objected to the reading of said notes on the ground that, notwithstanding the said Belloir had departed from and was still beyond the jurisdiction of the United States, and in parts unknown, and his testimony had been given on the examination of the respondent before

the United States commissioner on the same charge set forth in said indictment, and the counsel for the government had then and there cross-examined said witness, and the whole substance of said testimony could be proved, yet said testimony, however proved, was incompetent and inadmissible on this trial. The court sustained the objection, and said testimony was ruled out; to which ruling the respondent excepted.

(4) Franklin P. Morgan, a witness called by the government, among other things, testified that the respondent said to one Benjamin Muzzy, a witness called by the respondent, "that he [the respondent] had to look out for Newport folks." In order to contradict said Morgan the respondent recalled said Muzzy, and put to him the following question: "Did Mr. Angell at that time [referring to the time testified to by, said Morgan] say to you that he had to look out for Newport folks?" incorporating into the inquiry the language used by said Morgan. To this question the counsel for the government objected, on the ground that it was leading in its form. The court sustained the objection and overruled the question; to which ruling the respondent excepted.

(5) In order to prove his side of the issue, and as a full answer to the charge set forth in the indictment, the respondent offered in evidence a receipt signed by Chester Pike, collector of the third district of the state of New Hampshire, in which the respondent then resided, which receipt was given on or about the day on which it purported to be dated, viz., September 1, 1867, for a special tax assessed by the United States assessor for said district in the latter part of the month of August, 1867, of which receipt the following is a copy:

UNITED STATES INTERNAL REVENUE.

$37.50.                                                                                   No. 2,775.
*Receipt for Special Tax.*

Received of Welcome A. Angell thirty-seven and 50-100 dollars, for the special tax upon the business or occupation of a retail dealer in liquor, (retail dealer in liquor, $25; penalty, $12.50,) to be carried on at his store, ———— street, in the town of Sunapee, county of Sullivan, and state of New Hampshire, for the year ending May 1, 1868.

*Dated at Cornish, N. H., September* 1, 1867.
    [Signed]                                                           CHESTER PIKE,
[L. S.]                        Collector of the Third District, State of New Hampshire.

To the admission of this receipt the counsel for the government objected, on the ground that the same was incompetent, and was no answer to the charge set forth in the indictment. The court sus-

tained the objection, and ruled that said receipt was not competent for the purpose offered; to which ruling the respondent excepted.

(6) The respondent offered evidence tending to show that certain persons employed the respondent as their agent to purchase a quantity of new or Medford rum in Boston, the said persons paying to the respondent for the cost of said rum in advance, and the respondent receiving no profit from the transaction; and that, in accordance with that arrangement, the respondent procured a quantity of rum for said persons, and delivered the same to them from time to time in the proportions in which they were to have the barrel, according to the proportions of the purchase money paid by each of them. In view of this evidence the respondent requested the court to instruct the jury that if they believed that the respondent was employed by said persons to purchase said rum for them, the said persons advancing the cost of the same to the respondent, and the respondent purchasing the same with the money so advanced, as their agent, and without profit to himself, the transaction did not constitute him a retail dealer in liquor in contemplation of law, although he purchased the same in his own name, and received the bill of the same in his own name. The court declined to give said instruction, but did instruct the jury that if the respondent purchased the rum in his own name and had the same billed to him in his own name, and dealt it out from time to time as called for, he was a retail dealer in liquor, notwithstanding the money for the purchase of said rum was advanced to him by said persons, and he procured and dealt out the same without profit to himself. For this refusal of the court to give the instruction moved, the respondent excepted.

(7) The respondent also requested the court to instruct the jury that if the respondent had spirituous liquors on hand of his own at the time his agency to sell liquors for the town of Sunapee ceased, and his license from the United States as a retail dealer in liquor had expired, namely, on the first day of May, 1867, and sold only those liquors, the fact did not constitute him a retail dealer in liquor in contemplation of law. The court declined to give said instruction, but did instruct the jury that if the respondent, after his said license expired, sold or offered for sale said liquor, he was a retail dealer in liquor in contemplation of law; to which refusal and instruction the respondent excepted.

(8) The respondent also requested the court to instruct the jury that, in order to constitute the respondent a retail dealer in liquors, they must find that he was engaged in the sale of liquors as a trade

or business. The court declined so to instruct the jury, but did instruct them that, if the respondent sold or offered for sale foreign or domestic spirits, wines, ale, beer, or malt liquor, and his annual sales, including all sales of other merchandise, did not exceed the sum of $25,000, he was a retail dealer in liquor in contemplation of law; to which refusal and instruction the respondent excepted.

(9) The respondent also requested the court to instruct the jury that if the respondent sold liquor two or three times only, and did not sell it as a trade or business, that fact did not constitute him a retail dealer in liquor in contemplation of law. The court declined so to instruct the jury, but did instruct them that if the respondent sold or offered for sale foreign or domestic spirits, wines, ale, beer, or malt liquor, and his annual sales, including all sales of other merchandise, did not exceed the sum of $25,000, he was a retail dealer in liquor in contemplation of the law; to which refusal and instruction the respondent excepted.

(10) The jury retired to consider their verdict without taking with them the said indictment, and considered and found their verdict, and rendered the same in open court against the respondent, without having said indictment before them in their deliberations in their room; to which conduct of the jury the respondent objected. But the objection was overruled by the court; to which ruling the respondent excepted.

The jury returned a verdict for the United States of America and against the respondent. Whereupon, on account of said rulings, refusals, and instructions, the respondent prays that said exceptions may be allowed, and thereupon moves the court.

*Edmund Burke,* for respondent.

CLARK, D. J. 1. Leading questions may not be put upon main examination. 1 Greenl. 481; 1 Stark. 149. The rule is well settled, though there are some exceptions to it. The exceptions are not material to the first objection, because it is not contended that the question objected to in this instance is within the exceptions; but it is maintained that the question put to the witness was *not* a leading question. The question was this: "Did you drink any liquor at Mr. Angell's that day?" Now, is this a leading question? Very clearly it is. A leading question is one which suggests or *leads* to the answer, "which," as Greenleaf expresses it, "embodying a material fact, admits of an answer by a simple negative or affirmative," (1 Greenl. 481;) or, as Starkie says, "to which the answer, 'yes' or 'no,' would be conclusive." 1 Stark. 150.

Now this question leads directly to the answer, and it embodies a material fact and can be directly answered, and conclusively so, by "yes" or "no,"—a simple affirmation or negative; as, "Did you drink liquor at Angell's that day?" *Answer.* "No." In exception 4, a different point is made, but it may be considered in this connection.

The objection of the district attorney was that the question was leading in form. The court sustained the objection. But it is said that the question was admissible, because it was put to the witness to contradict a statement of Morgan, the government's witness. Morgan testified that Angell said "he had to look out for Newport folks," and that he said it to Muzzy. To contradict him, Muzzy was called by the respondent, and asked, "Did Mr. Angell, at that time, say to you that he had to look out for Newport folks?"

Among other exceptions to the rule, that leading questions may not be put on main examination, it is said, both by Greenleaf and Starkie, that, where a witness is called to contradict the testimony of a former witness, who has stated that such and such expressions were used, or certain things said, it is the usual practice to ask *whether* those particular expressions were used, or those things said, without putting the question in the general form of inquiring what was said. 1 Stark. 152; 1 Greenl. 482.

This is the nearest approach stated in the books to the case under consideration. But it is not the precise case. Had Muzzy been asked *whether* Angell said to him that he was obliged to look out for the Newport folks, it would have been admissible, for it would have been put in the alternative—that is, did he say so, or did he not say so—and would not have so clearly and directly led the witness to the answer desired. But no authority has been found, and it is believed no correct practice sanctions such a question, in so directly leading form, as that asked of the witness. It was properly ruled out.

We will now turn to the second exception. The precise point is not so clearly stated in this exception, perhaps, as it might have been, but it is sufficiently so to arrive at a proper determination of the question raised. It was competent for the witness to have testified, if the fact were so, that he employed Angell to get *him*, or him and others, some rum; and it was not to that part of the testimony that the objection applied, but to the declarations made by Angell to the witness, "that a club was being formed to send for a barrel of rum, and that he might join them." But it is contended that these declarations were a part of the *res gestæ* and were so admissible. But were they?

Declarations accompanying and explaining the *res gestæ* may undoubtedly be proved. 1 Greenl. 119–120, and other elementary writers; *Sessions* v. *Little,* 9 N. H. 271. But such declarations are not admissible as part of the *res gestæ* unless they in some way elucidate or tend to characterize the act which they accompany, or may derive a degree of credit from the fact itself. *Woods* v. *Banks,* 14 N. H. 101.

Now, for what were these declarations offered? Not to explain or elucidate the transaction between the witness and respondent, but to show that certain persons had clubbed together to employ the respondent to get them some rum, and for that purpose they were not competent. They were the declarations of the respondent himself, deriving no degree of credit from the transaction itself. Such declarations were not the best evidence the case afforded. The persons clubbing to employ Mr. Angell might themselves, for aught that appears, have been called, or one who did so club with the others.

There is often great difficulty in determining whether the declarations offered are part of the *res gestæ;* and, say the court, in *Lund* v. *Inhabitants of Tyngsborough,* "it is for the judicial mind to determine, upon such principles and tests as are established by the law of evidence, what facts and circumstances, in particular cases, come within the import of the term." 9 Cush. 42. In that case the declarations of a physician, made at the time of the examination of an injury, offered to show the nature and extent of the injury,—the examination, detached from the declarations, being unimportant and immaterial,—are inadmissible in evidence, not being a part of the *res gestæ,* although the physician be dead at the time of the trial. *Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 36.

The principle seems to be this, as stated by *Wilde,* J., in *Haynes* v. *Butler,* 24 Pick. 244: "If the declaration has no tendency to illustrate the question, except as a mere abstract statement, detached from any particular fact in dispute, and depending entirely for its effect on the credit of the person making the declaration, it is inadmissible." 1 Stark. 47. Here the statement offered to be proved was an abstract statement, and depending entirely on the credit of the persons making the statement.

The third exception is the next in order. The law is well settled, in civil cases, that the testimony of a deceased witness, given in a former action, may be offered in a subsequent trial of the same matter between the same parties. The cases are numerous. It is also stated that the evidence is received if the witness, though not dead,

is out of the jurisdiction, or cannot be found after diligent search, or is insane, or is sick, or unable to testify, or has been summoned, but appears to have been kept away by the adverse party. 1 Greenl. 193. But on this point the law is not so well settled, nor the practice so uniform, as in the case of the death of the witness. See 1 Greenl. 194, note, and cases there cited. This is in civil cases. But the case now before us is a criminal case, or one on an indictment for a misdemeanor, and is to be decided upon the rules of evidence applicable in criminal cases. It presents this question: Whether the witness, being beyond the jurisdiction of the United States, his testimony given before the committing magistrate, in a preliminary examination, where he was cross-examined, can now be given in evidence in a trial upon an indictment found in the same case. The law is very uniform, in *civil* cases, that the testimony of a *deceased* witness in a former trial may be given in evidence in a subsequent trial of the same matter between the same parties. But it is not so uniform in criminal cases. In many cases and courts it has been held not to be admissible. So held in *Finn* v. *Com.* 5 Rand. 701; so in 1 Overton, (Tenn.) 229. In other cases it has been held to be admissible.

In the case of *U. S.* v. *Wood*, 3 Wash. C. C. 440, it was held that what a witness (since dead) swore at a previous trial of the *same indictment* might be proved, provided the persons undertaking to repeat the testimony, could do it as it was given, and not repeat the substance of it. So held in *Summons* v. *State*, 5 Ohio St. 325. And in the case of *U. S.* v. *Macomb*, 5 McLean, 286, where the defendant was arrested for robbing the mail, and a witness who testified in the preliminary examination died before the trial on the indictment, it was held that proof of his testimony on the preliminary trial was admissible. This is when the witness was dead. In cases where the witness was living, but had gone without the jurisdiction, the decisions have been very uniform that the testimony is not admissible.

In *Finn* v. *Com.* 5 Rand. 701, it is said that proof of what a witness said upon a former trial is inadmissible in a criminal prosecution, *especially where he has only removed out of the state.* The same was held in New York, in the case of *People* v. *Newman*, 5 Hill, 295. So also in *Brogy* v. *Com.* 10 Gratt. (Va.) 722; in *Bergen* v. *People*, 17 Ill. 426; in *State* v. *Houser*, 28 Mo. 233; and these are all the American criminal cases I have been able to find on this point.

I have found no case where the testimony of a witness, absent but living, given at a former trial, has been allowed to be proved at a subsequent trial. There are cases where the testimony of the witness in the preliminary examination has been allowed to be proved, when the witness had died, but none where he had gone from the jurisdiction. And I think the law must be held to be that when the witness is living he must be produced, or his testimony cannot be received in criminal cases, even if he be beyond the jurisdiction of the court or of all the United States. The constitution of the United States provides (amendments, art. 6,) that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him; and this without exception. Not if they can be produced, nor if they be within the jurisdiction, but absolutely and on all occasions. And, if the accused has this right, it must be mutual, and exist on the part of the government. The trial would not be a fair one otherwise. Nor can it fairly be maintained that, if the witness has once been confronted with the accused, before the committing magistrate, that the requirements or guaranties of the constitution are answered.

It is little better than an evasion of the matter to say that if the witness has been present at the preliminary examination, when the real question is whether the accused shall be held for the action of the grand jury, that, therefore, when he is indicted, and life, liberty, or property are at stake, that right no longer exists. As well might it be said that if, in the complaint before the magistrate, the accused was informed of the nature and cause of the accusation, the subsequent indictment need not state the accusation again. The fair meaning of the constitution is that wherever and whenever he is put on his final trial he shall be confronted with the witnesses against him, if they be alive. The ruling of the court in excluding the testimony of Belloir, upon a pretty thorough examination and mature consideration, is affirmed.

As to the fifth exception there was evidence to show that between May, 1867, and September, 1867, the respondent exercised the business of a retailer of liquors without a license, and without paying the required tax. September 1, 1867, he paid the tax and received a license, and no attempt was made or proof offered to show that he sold after that time. It was to meet the proof of the sales prior to September 1, 1867, before the respondent had paid his tax and received the license, that the receipt was offered, and it is contended that the receipt has a retroactive effect, and is a full answer to the

charge and proof. But it can have no such force. The revenue law (14 St. at Large, 112,) provides "that any one who shall exercise or carry on any trade, business, or profession, or do any act hereinafter mentioned, for the exercising, carrying on, or doing of which a special tax is imposed by law, without payment thereof as in that behalf required, shall, for every such offence, *besides being liable to the payment of the tax*, be subject to imprisonment for a term not exceeding two years, or a fine not exceeding $500, or both." Now, if the fine and imprisonment are in addition to the tax, or, as the law expresses it, besides being liable to the payment of the tax, how can it be contended that the payment of the tax releases from the fine and imprisonment?

Again, the penalty had been incurred before the payment of the tax, and the receipt given could not operate as a pardon. The law makes no provision for such an effect, nor could the collector of taxes confer it. The collector could not pardon the offence. The president alone could do it. If there had been any proof, or any question made, about any sale after the first of September, 1867, then the payment of the tax and the license would have been competent, and a full answer to such subsequent sale; but there was none, and it was offered to meet the sales before the payment of the tax, and it was properly rejected.

The instructions here in the sixth exception asked were properly refused, and those given were correct.

When the respondent was employed to procure some rum for various parties, he had two courses to pursue. Either he could have purchased for the parties employing him, and in their names, or he could purchase in his own name, and afterwards transfer it to them. He chose the latter course. He purchased for himself (though with their money) and transferred it to them; and he stood exactly in the place of a person selling beforehand and taking pay for what he furnished afterwards. It can make no difference that he did this without a profit. A man often sells without a profit, or at a loss; still it is a sale. Nor is it very material to consider what remedies the principals might have had against their agent if he had not delivered them the rum. But it is very certain no one could have claimed the whole barrel of rum, nor could they all collectively have claimed it; the most that can be said is that each had a claim for a specific part. But the very material question is, to whom was the rum sold actually? How did the respondent purchase it? In his own name or that of his principals? If in his

own name, he could not convey it to other parties without a resale; and whenever he delivered a portion of that rum to any person, for money paid either before or afterwards, it was a sale of so much.

Where it does not appear that an agent, making a contract, acted expressly or ostensibly as a public agent, it will be deemed a private contract. *Swift* v. *Hopkins*, 13 Johns. 313; *Olney* v. *Wickes*, 18 Johns. 122. A government agent, known to be such, is personally liable on his contracts, unless he discloses that they are made for the government. *Sheffield* v. *Watson*, 3 Caines, 69. A contract made by an agent for his principal should be in the name of the principal. *Spencer* v. *Field*, 10 Wend. 87. When he acts in his own name he binds himself. *Bank of Rochester* v. *Monteath*, 1 Denio, 402; *Wiley* v. *Shank*, 4 Blackf. 420.

There can be no doubt that if the respondent had purchased this rum on credit he would have been liable to the vendor for its amount. Why? Because, not disclosing that he was an agent for others, he had made the purchase to himself, and bound himself, so that when he transferred it from himself to others it must be regarded as a sale. The transaction clearly was that the vendor in Boston sold a barrel of rum to the respondent. He knew nobody else. He did not sell so many gallons to A. and so many to B. and so many to C. Nor did the respondent purchase so many for A. and so many for B. and so many for C., separately, but he made one purchase of a barrel to himself, and then parcelled it out as parties desired it, having taken pay beforehand.

Upon exception 7 there can be no reasonable doubt. The instructions prayed for would have been clearly wrong and without law. Congress has the power under the constitution to lay and collect taxes, duties, and imposts. Article 1, § 8. It has also power to raise armies, and provide and maintain a navy, and to do various things requiring money; and hence an implied power to raise the money in any proper manner not repugnant to the constitution. This, congress has undertaken to do by a tax or duty upon various articles and employments. Among other things, it has imposed a special tax of $25 upon retail dealers in liquors, and imposed a penalty for exercising the business without paying such tax, if any one attempts it. There was proof that the respondent undertook to retail liquor without paying the tax; and to excuse himself from the penalty the defendant says he was town agent for the town of Sunapee, and while so agent, he had a license from the United States to carry on the business of a retailer, and when

that license expired, May 1, 1867, he had some liquors on hand, and he sold afterwards only such liquors, and was not chargeable. The answer to this is that his former license was to exercise the business for a *specific time*, and when that time expired his license expired, no matter what he had on hand. Suppose that while his license lasted he had purchased stock enough to have lasted him five years, could he on that account have continued to sell those liquors for five years? It would be an evasion of the law to have allowed it; and no matter from whom he purchased the liquor, whether from the town or from the state of New Hampshire, neither could confer on him any authority to sell.

The law of congress is paramount, and the court gave proper instruction upon the point.

Upon the eighth and ninth exceptions it is sufficient to say that congress has defined (14 St. at Large, 116, 474) what constitutes a retail dealer, to-wit: "Every person who shall sell or offer for sale foreign or domestic spirits, wines, ale, beer, or other malt liquors, and whose annual sales, including all sales of merchandise, do not exceed $25,000, shall be regarded as a retail dealer in liquor." And the court instructed the jury what or who was a retail dealer, in the language of the law. The instructions prayed for were not in accordance with the statute, and could not properly be given.

We come now to the tenth and last exception. In all criminal prosecutions the accused has the right to a trial by jury, and to be informed of the nature and cause of his accusation. Article 6 of the amendments of the constitution.

That the trial may be fair the jury must also be informed of the nature of the accusation; and before the trial commences the indictment is read, and the charge generally explained. It was so done in this case. There is no complaint that the jury did not understand the cause, or it had not been stated to them, nor that the indictment was not present at the trial, nor that the respondent had not sufficient opportunity to examine and take exceptions to it. But we are asked to arrest the judgment because, inadvertently, the indictment was not sent with the other papers to the room of the jury while they were deliberating. There is no doubt the practice is thus to send the indictment with the jury, and in a case where injury resulted to the respondent the court would interfere to shield him from that injury. But the court cannot presume such an injury, and there is no pretence of any here. If the jury had needed the indictment when in their room they could have called for it, but they did not; they did

not need it; they knew of what the respondent was accused; they knew they were trying him on the charge in the indictment, and they were not aware of its absence until they came into court. We think such an inadvertence is no cause for arresting the judgment. Judgments are generally arrested for mistakes or defects in the record; and in *Burnett* v. *Ballun,* 2 Nott & McC. 435, it was held they would only be arrested for error apparent in the record. But they are sometimes arrested for other reasons; as the previous opinion of a juror, misconduct of a juror, or the improper separation of the jury. But here is no error in the record, no suggestion of the want of an impartial jury, or of misconduct, or of unfairness, but a mere inadvertence, working no damage to the respondent.

There must be judgment on the verdict.

