*R. P. Quarles* for plaintiff.

*W. A. Kinney* and *R. B. Anderson* for defendant.

---

# CARL WALDEYER *v.* WAILUKU SUGAR COMPANY, LTD.

### EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

ARGUED NOVEMBER 19, 1908.               DECIDED NOVEMBER 20, 1908.

HARTWELL, C.J., WILDER, J., AND CIRCUIT JUDGE DE BOLT IN
PLACE OF BALLOU, J.

CONTINUANCE—*abuse of discretion.*

> An order denying a motion for a continuance will not be reversed unless, as does not appear in this case, an abuse of discretion is shown.

## STATEMENT OF THE CASE.

The plaintiff brought his action to recover damages for several breaches or violations of the terms of two separate tunnel contracts made with him by the defendant, the sum of $24,975 being demanded as damages for certain alleged violations of the terms of the contract of February 15, 1905, and the sum of $10,404,86 for certain alleged wrongful acts of the defendant in relation to the contract of March 1, 1905. The defendant's motion for a continuance on the ground of the absence of material witnesses being denied the defendant excepted to the ruling and was allowed an interlocutory bill of exceptions. The motion was supported by the affidavits of C. B. Wells, manager of the defendant company until October 31, that he had full control and charge of the transactions between the defendant and the plaintiff, and that he had not prepared to meet litigation out of the first contract because he understood that the second settled all claims under the first contract, and that he was surprised by a letter from the plaintiff about the close of August presenting an enormous claim for damages against the defendant for breach of the contract, which letter was immediately placed in the hands of Messrs. Kinney & Marx, whose senior member, W. A. Kinney, had represented the defendant in all matters concerning the contracts, authorizing the firm to take all necessary steps to meet the claim, although no suit, was then brought, and it was uncertain when it might be brought; that he notified the defendant's present manager, Penhallow, then assistant manager, on a vacation at the coast, to hunt up witnesses on the coast who were in Wailuku when the first contract was being carried out and had work-

ed upon it under the plaintiff, and also to meet Kinney on the coast, where he was then due to arrive shortly and get his assistance in carrying out the instructions; that a number of witnesses known to him whose evidence was material and necessary for the defense were as yet not located, although strenuous efforts had been made to secure them, but there was every reason to believe that they would be located within a reasonable time, and that the failure to get hold of all the evidence necessary was wholly due to the plaintiff's delay in bringing the suit, and that the time from the plaintiff's demand was wholly too short to secure the necessary evidence, scattered as it was in Japan, on the coast and elsewhere, and that the time until the next term would not be too long by due diligence to secure the witnesses in deposition form and ready for trial, with further immaterial averments as to plaintiff's having harrassed and annoyed the affiant by suits;—of W. A. Kinney, of the firm recently of Kinney & Marx, and now Kinney, Marx, Prosser & Anderson, to the effect that his firm was retained by the defendant in an arbitration suit with the plaintiff relating to differences between the parties under another tunnel contract between them, and that at the hearing at the arbitration there was valuable evidence, particularly from the plaintiff, having a vital and pertinent bearing on many of the issues in the present action; that the arbitration matter was settled and that no transcript of the testimony was called for as it was not anticipated that the plaintiff would bring any further suit on said contract; that the affiant was the only member of his firm conversant with the arbitration proceeding; that he left Honolulu on business for Boston on September 8, being furnished just before leaving with the plaintiff's demand foreshadowing this action, and that although not certain that the suit would be brought he made inquiries in San Francisco for collecting evidence upon the subject, and particularly as to the whereabouts of one Halverson, who for about a year had charge in

the plaintiff's name of the performance of the first contract, and saw Halverson and obtained from him much valuable information on the issues raised by the plaintiff's demand; although affiant did not learn that the suit was brought until his return to Honolulu October 23, his trip to Boston being exclusively for professional engagements in matters pending before courts in Massachusetts affecting the interests of clients in Hawaii; that upon returning from Boston he saw Halverson again in San Francisco, and then learned that means had been found to locate a large number of Japanese, ten or twelve in number, who worked under plaintiff and under Halverson in performing the original contract, and that he thereupon retained McClanahan & Derby in San Francisco to represent the defendant, instructing them to proceed forthwith to locate the Japanese and take their depositions; that in order to furnish data for McClanahan & Derby's search for evidence from the Japanese it was necessary to furnish them with the evidence taken before the board of arbitration; that upon returning to Honolulu affiant found that the transcript of the evidence had been ordered and was shortly to be completed, whereupon copies of plaintiff's complaint and the transcript were got away by the first mail after the transcript was furnished by the stenographer and has probably reached McClanahan & Derby; that affiant had for some years acted as defendant's counsel prior to the formation of his partnerships, and was cognizant from time to time of the matters of the contracts between plaintiff and defendant arising out of the said two contracts; that he was counsel for defendant in drawing the contracts, both he and the defendant understanding that the second superseded the first contract so that the plaintiff's claim was a surprise and no preparation had been made by him to prepare for it; that nearly four years have passed since the first contract and most of the witnesses to the issues thereunder are scattered in foreign countries, many of them having been completely

Waldeyer v. Wailuku Sugar Company, 19 Haw. 245.

lost sight of, all or many of whom are vital and important wit-
nesses for the defense; and that it would be unsafe for the
defendant at this time to proceed to trial without securing evi-
dence of a number of them, including the evidence of Halver-
son and the Japanese located in California as well as one Honda
who had been subpoenaed in the cause and in violation of the
subpoena left the Territory for Japan, and also the testimony
of one McCann, formerly of Lahaina, well acquainted with
the plaintiff's business methods, ability and record as a tunnel
man and contractor; that the defendant's officers, as the affiant
is informed and believed, have credibly been informed that the
plaintiff's tunnel plan and appliances under the original con-
tract were inadequate for the work called for by it and not
such as it required of the plaintiff, but that sufficient time has
not been given to counsel or the defendant to secure and pre-
pare expert evidence to establish that fact, which evidence
would have to be obtained partly at the coast from men skilled
in making and using tunnel machinery and appliances, and
that to secure the evidence it would be necessary to have a
detailed description of plaintiff's appliances and also personal
inspection by the experts; that it is customary for the affiant's
firm to have engagements blocked out from two to three months
ahead, and that when this suit was brought fully two months'
work had been provided for, the affiant and his partner, Mr.
Prosser, being now due in Honolulu on November 16 by posi-
tive engagements for the trial and defense of one Koki in the
federal court on a charge of embezzlement, which trial in all
probability would take a month, and that then the affiant and
said Prosser as well as his partner Anderson had several
months' work accumulated and for trial in the first circuit court,
and that an unusual length of time would be required to pre-
pare for trial in this cause by reason of the plaintiff's laches
in delaying it until witnesses were scattered thousands of miles
away; that all of the witnesses would give vital and material

evidence if called at the trial; that Halverson would testify, among other things, that the plaintiff was wholly incompetent and unable to carry out the original contract and had failed to perform the same and was in default when the plaintiff and his bondsman called in Halverson to perform the contract for them; that when he took charge all the men had deserted the tunnel work and plaintiff was unable to get them back because he had fraudulently and unfairly appropriated money furnished him by defendant to pay the men, which he had failed to do, and moreover that the plaintiff was so abusive and violent at times to the men that they did not care to work under him, with further details as to the testimony which Halverson would give.

An affidavit was also filed by the defendant of M. F. Prosser that the papers first served on the defendant did not purport to be certified copies and that he notified the plaintiff's attorney of the mistake, and that he did not desire to take advantage thereof and move to quash as he might have done; that the action was commenced during the absence of Kinney, the senior member of the firm, who was thoroughly conversant with the matters relating to the parties; that about October 15 he learned that one Honda was a necessary and material witness for the defendant, without which the defendant could not safely go to trial; that Honda was in Honolulu and affiant caused him to be served with a subpoena to be present at this term of court as a witness for the defendant; that Honda told the affiant that he was a contractor for tunnel work for the defendant at the same time when such work was being done by the plaintiff and under similar conditions except that Honda got only four dollars a foot while the plaintiff was getting five dollars; that the plaintiff, owing to inability to carry out his contract and his unfair methods to the men was in constant trouble with them so that he was unable to carry out the terms of his agreement with the defendant, and that by unfair methods of

treating the labor and failure to pay them what they had earned the plaintiff had acquired such a reputation among the Japanese laborers that he could not obtain them at any price, and therefore his work was greatly delayed and unskillfully performed to the great loss and annoyance of the defendant, and that Honda's evidence as well as that of the Japanese, whose names are unknown to the affiant, referred to in Kinney's affidavit as in California, is material and necessary to prove that the defendant's breaches of the contract did not occur; that the affiant notified plaintiff's counsel shortly after arrival at Wailuku about October 26 that it would be impossible for the defendant to get to trial at this term for the reason stated in the affidavits of himself and W. A. Kinney. The plaintiff filed objections to the motion on the ground that the affidavits do not show grounds for a continuance, that the facts expected to be proved by the witnesses are not set forth with sufficient particularity and instead of stating facts mere conclusions are stated therein; that the affidavits do not show that the evidence of said absent witnesses is not cumulative or could not be proved by other witnesses within reach, and fail to show due diligence to obtain their evidence by deposition or otherwise, and show that the witnesses whose evidence is sought are beyond reach by process, and with the exception of Halverson, whose deposition could be procured within the two months since service of summons, are unknown to the defendant. The plaintiff filed his own affidavit to the effect that the deposition of Honda could have been obtained with reasonable diligence; that many of the Japanese who worked with Honda and for the plaintiff and under Halverson are now on Maui and other islands in the Territory; denies that delay in bringing the action was due to motives assigned to him in Well's affidavit; that he would have brought the action sooner if it had been convenient and practicable for him to do so; that the matters involved in the arbitration are different from those involved

in this action and arose under a different contract; that the defendant was informed soon after the end of the arbitration proceeding that the plaintiff intended to bring this suit for damages. Other matters irrelevant to the issue are also set forth.

Lightfoot's affidavit was also filed by the plaintiff to the effect that Prosser, one of the defendant's attorneys, told him about October 23 that the defendant's cases were ready for trial and its attorneys would insist upon immediate trials and not consent to continuances but oppose applications for continuances, but October 30 Prosser told him that the defendant would be unable to proceed to trial in this case at the present term; that there was ample opportunity to take Honda's deposition both in Wailuku and Honolulu.

W. A. Hardy's affidavit was also filed by the plaintiff that he was employed by the plaintiff in the Waihee ditch tunnel as foreman during a large portion of the time that Halverson was there, and that many Japanese laborers working there are now on Maui. The plaintiff also filed his statement that he admitted that Honda if present would testify to all the facts which the affidavit of Prosser shows that he would testify to, and that Prosser's affiant (affidavit) might be read in evidence in so far as it showed what Honda's evidence would be and to have the same effect as if testified to in court. Also that the witness Halverson if present would testify to the fact as set forth in Kinney's affidavit as Halverson's evidence, and that Kinney's affidavit, so far as it sets forth what Halverson's evidence would be, may be read as the deposition and evidence of Halverson at the trial.

Counter affidavits were filed by the defendant of Penhallow going further into statements made to him by Halverson and of Wells that he could not except in a general way give statements made by witnesses to him, but that he knew that they would testify as claimed by him; that Halverson's evidence would not be cumulative since he would testify to conversations

with the plaintiff and to matters and things coming to his knowledge as foreman in charge of the ditch tunnels part of the time covered by the complaint, and that during Halverson's employment he was the only person familiar with the English language employed there and was a person of intelligence whose evidence would be received with respect and carry great weight, and that he only could testify to conversations had with or directions given by the plaintiff concerning the work; that he was anxious to go to trial at this term but yielded to advice of counsel that he could not safely do so, and further as to conversations with Honda and the affiant's surprise to hear of Honda's contemplated departure so that he had only time to notify his Honolulu agents twenty-four hours before Honda left the island (of Maui) on his way to Japan, and further that Honda as a contractor of similar tunnel work would testify that he had often visited plaintiff's tunnels and was familiar with his methods during times not covered by Halverson's evidence. Other facts bearing upon the case are mentioned in the opinion of the court.

### ORAL OPINION.

HARTWELL, C. J.    A statement of the case will be filed later and the court does not for that reason delay to announce its decision now, which is that it is unable to find legal grounds for reversing the ruling of the judge denying the defendant's motion for continuance.    (Statement appended.)

In cases where it is claimed that there was abuse of discretion it is sometimes possible and sometimes it is impossible to lay down clearly defined rules to control an appellate court. Definitions of abuse of discretion are frequently found.    That of Chief Justice Marshall adopted in *People v. Vermilyea,* 7 Cow. 369, is a fairly exact definition although not covering all the cases of abuse of discretion.    Disregarding known rules of law on any subject on which there are known rules would be error whether called abuse of discretion or not.

A continuance is frequently a matter of common right irrespective of any statute or rules of court and a disregard of the right by refusing a continuance would be an abuse of the discretion to postpone the trial. Take, for instance, the case of the death or sudden illness of a material witness. It is seldom that counsel would resist a continuance for that cause, but it would be a matter for consideration whether the evidence was available from another source and was merely cumulative. A question of law might arise on the ground that the evidence which the witness should have given is merely cumulative to other evidence shown to be available. The appellate court could say whether it was or was not so and there is no discretion in the determination of the matter. In this case the court denied the motion on the grounds substantially that due diligence had not been shown by the defense; that the noncumulative evidence sought was admitted by the plaintiff and that the evidence not admitted and not available was merely cumulative.

A great deal is said and ought to be considered concerning the effect of the personal attendance of a witness in place of an admission by opposite counsel that he would testify as claimed. We all understand the advantage of having a good witness before the jury, and yet the practice appears to be that if it is admitted that he would testify as claimed and that the jury might consider the evidence as if presented by the witness that is sufficient to require the trial to go on.

We are unable to find any capricious or arbitrary disregard of any general principles of law in refusing the defendant's motion, and, to illustrate this fact, I am allowed by Mr. Justice Wilder to say that he considers that if the motion had been before him he would not have been justified in granting it. On the other hand, I am authorized by Judge DeBolt to say that he would have granted the motion and I am inclined to think that I should have done so. It appears to all of us that there has been no lack of good faith on the part of the defend-

Waldeyer v. Wailuku Sugar Company, 19 Haw. 245.

ant or any of its attorneys. I was much impressed by Mr. Kinney's showing of the importance of full and thorough preparation of a defense in such a case and of not coming into it in a slipshod, haphazard way; but, as he remarked, different counsel would look upon the matter differently. One would rely more upon a legal defense and take less care to obtain an elaborate defense on the facts than another would; in other words, one is more cautious than another may be. Now I have great respect for the habit of elaborate preparation. It is expensive frequently in time, money and effort, but it tells undoubtedly as any of us know who have had long practice at the bar. If the senior counsel for the defendant had been here when service of the complaint was made, with his methods, which we all understand, of elaborate preparation, he would not have neglected any opportunity available to obtain the showing he now seeks to obtain for the defense if he then desired the continuance; but he was absent and did not return for fifty-three or fifty-four days after the service. Who was to suffer for his absence? It is the general understanding, I believe, that engagement of counsel in other cases in other courts is not an excuse for granting continuances; if it were where would parties litigant be? The senior counsel stated very vividly where they would be when he said that if counsel in fifteen or twenty cases, equally important, had to show due diligence and be ready for trial in all of them at the same time an impossibility would be required. Of course it would be. This would mean that the plaintiff or the defendant, as the case might be, would have to await his turn until other cases in which the same counsel were engaged had received his attention. The excuse is properly not recognized.

What the defendant could have done upon service of the complaint is not for this court to say, but it is clear to us that the absence of its senior counsel is cause of the continuance being asked and that it would not have been required if he

had been here giving his professional attention to the matter from his point of view. It was not until November 5, a considerable time after the term opened on October 21, that counsel felt that the continuance was requisite,—for what reasons it is not for this court to say. It appears from the affidavit of the defendant's former manager, Wells, that he wanted the trial at this term, being about to go away for a foreign trip, and that counsel had not decided to ask a continuance when one of them at the opening of the term told the plaintiff's attorney that they should insist on going to trial. It might well have been a question of balancing the advantages and disadvantages of a trial in the absence now of a principal witness or in the possible absence of Wells at the March term. What was in the mind of counsel we cannot say, but we know that after service of the complaint September 10, the answer being due September 30, on September 29 twenty days' extention of time to answer was requested by the defendant's attorneys and agreed upon by the plaintiff, the order extending the time being made September 30; that the answer due October 20, under the order extending the time, was complied with by filing the answer October 19, and that no suggestion of a continuance was made until the filing of this motion November 5; that Mr. Kinney left Honolulu September 8 and returned October 23, presumably leaving San Francisco October 16 or 17.

It may be that some of the grounds on which the court denied the motion present questions of law which we could consider and if we did not agree with its view of them we could reverse his order, as, for instance, on the subject of cumulative evidence; but due diligence is in many cases one of those general terms difficult to bring within any rules of law. The fact that the judge exercised his discretion without any apparently improper motive or from caprice, but upon consideration, as far as we can say, of the facts, makes it impossible for this court to say that he abused the discretion, no matter what any

one of us would have done if the case were before us in the first instance.

Upon the undisputed facts we could not say that the judge abused his discretion, but, going further, what right have we to say that he believed the affidavits on the one side or those upon the other. I quite believe the statement of Mr. Kinney that he considered further time to be necessary for the defense and that a transcript of evidence before the arbitrators was needed in order to prepare interrogatories for Halverson. The trial court may have thought otherwise. How do we know what he thought, as his ruling was based partly upon his view of the facts and partly upon his view of the law?

As to the authority of this court to review exceptions to granting or refusing a continuance, *Queen v. Ah Kiao,* 8 Haw. 467, affirms the jurisdiction in cases showing an abuse of discretion. The same position, after several previous decisions declining to consider such exceptions, is taken in *Isaacs v. U. S.,* 159 U. S. 489. Earlier decisions, beginning with *Woods v. Young,* 4 Cranch, 237, were that such matters were not reviewable.

I may have omitted considerations that influenced the court in its decision and will ask Mr. Justice Wilder and Judge DeBolt to mention any that occur to them, whether in accord with what I have said or not.

WILDER, J. My view has been stated by the chief justice, and while agreeing with him that no abuse of discretion has been shown, I go a little further and think that the trial judge decided the motion correctly, the same as I would have done if the motion had been presented before me in the first instance. Consequently I feel quite clear that the exceptions should be overruled.

JUDGE DEBOLT. I concur in what the chief justice has said that there is no showing of any abuse of discretion.

HARTWELL, C. J. The exceptions are overruled.

*R. P. Quarles* for plaintiff.

*W. A. Kinney* and *R. B. Anderson* for defendant.