# STATE v. MOELLER.

(138 N. W. 981.)

**Evidence — former testimony.**

1. Upon a former trial of this action in the district court, one Dr. E. was a witness for the state. He was asked a question upon cross-examination to which an objection was sustained by the trial court, which ruling was held to be error by this court upon a former appeal. At the present trial below, the said Dr. E. was outside of the jurisdiction of the trial court, and his testimony was given by the official reporter of the former trial from his shorthand notes. Appellant contends that this testimony was improperly admitted, because he had no opportunity to cross-examine the witness upon the former trial. However, the statement of the case shows that substantially the same question was asked the doctor upon the former trial, and that he answered the same without objection. The statement of the case upon the former appeal being narrated and much abbreviated, and the state, failing to call the facts to the attention of the court, misled this court at that time. Under the facts now shown, it is held that defendant had a full opportunity to cross-examine the witness upon the former trial, and that this objection to the testimony upon the second trial upon that ground was properly overruled.

**Accomplice — question for jury — evidence — instructions.**

2. Whether one Dale was an accomplice with defendant in the commission of the defense, and whether his acts as such in furtherance of the common object tended to show the guilt of defendant, were facts for the jury to determine, and the testimony offered at the trial of acts done by Dale in furtherance of such common purpose towards the commission of the offense was properly admitted, and the instructions of the trial court were full, fair, and accurate.

**Expert testimony — hypothetical questions.**

3. Dr. W., sworn as an expert, was asked two hypothetical questions based upon the testimony of all the state's witnesses, including that of Dr. E., and calling for his opinion as to the cause of the death. *Held*, that the questions were proper, the testimony of Dr. E. being held properly admitted in paragraph one.

**Appeal — argument of state's attorney — objection.**

4. The assistant state's attorney, during his remarks to the jury in summing up the case, referred to the defendant as a "professional abortionist," "a moloch who kills unborn children for the almighty dollar," etc., but the defendant's attorneys "did not care to interrupt the argument," and did

not give the trial court any opportunity to stop the language or rebuke counsel, but made the objection after the argument had ceased. *Held,* following State v. Knudson, 21 N. D. 562, 132 N. W. 149, that this court will not reverse the trial court for objectionable language of counsel not called to his attention by timely objection.

Opinion filed June 29, 1912. On rehearing December 16, 1912.

Appeal by defendant from a judgment of the District Court for Ward County, *Leighton,* J., convicting him of murder.
Affirmed.
*Palda, Aaker, & Greene,* for appellant.
*D. L. Nash,* State's Attorney, for respondent.

BURKE, J. Defendant stands convicted of murder in the second degree, it being alleged that he caused the death of a certain young woman upon whom he performed a criminal operation. This is his second conviction, the first having been set aside by this court. See same title, 20 N. D. 114, 126 N. W. 568. At this time he does not challenge the sufficiency of the evidence received to sustain the conviction, but complains of certain rulings of the trial court and misconduct of the assistant prosecuting attorney. Owing to the excellent presentation of this appeal, we are able to dispose of the case with the minimum amount of labor. Appellant groups his assignments of error under four heads, and we will dispose of them in order.

(1) Upon the first trial of this case, one Dr. Engstad was sworn as a witness and testified that he had examined the girl some six days prior to her death, and had found her in robust health. Upon his cross-examination he was asked by appellant's attorneys whether an infection caused by an injury to the uterus might not remain dormant a greater or less period of time before it spread out and gave evidence of its presence. This question was objected to by the state, and the objection sustained. In the former opinion this court held that this ruling was error; the said ruling being based upon the statement of the testimony at that time presented; it being deemed proper to show that the girl might have already inflicted upon herself the wound that caused her death, and that the doctor was mistaken in stating that her health was good at the time he examined her. At that trial, however,

the testimony of the doctor was narrated, and this court, not having had its attention called thereto, was misled and made the ruling alleged; but at the present time it appears from a fuller statement of the testimony that practically the same question had been asked the doctor, and that he had answered it without objection from the state. Thus, the ruling of the trial court in the former trial was error, if at all, without prejudice. All of this becomes relevant to this appeal when we find that upon the present trial Dr. Engstad was out of the state and could not be found. His testimony given upon the former trial was thereupon offered in evidence to prove the same facts. Appellant does not seriously dispute that the testimony of the doctor taken at the former trial might have been used if a proper foundation were laid therefor, but insists that such foundation was not laid. In particular they assert that upon the first trial defendant was denied the right to fully and fairly cross-examine Dr. Engstad. As we have already shown this is apparently so only. It thus follows that the testimony the doctor taken upon the former trial was admissible.

(2) The second group of errors relates to the admission of certain testimony showing acts of one Dale, whom the state alleges to be a fellow conspirator with the defendant and the girl in procuring the abortion. Objection is also made to the instruction of the trial court in mentioning conspiracy at all. Dale, it is alleged, was the man responsible for the pregnancy of the girl. It was shown at the trial that he came to Minot a day before the girl, and engaged the room at the hotel wherein she died; and that he was seen in consultation with the defendant; that he bought for the use of the girl and doctor certain articles, such as distilled water, that were found later in the girl's room; that he was seen frequently in the room just before her death; that he was seen carrying the slop jar from the room, and that it was afterwards found to be bloody; that when the girl died defendant sent a man across country 60 miles to bring Dale into Minot. Defendant admitted that Dale was the person who had asked him to attend the sick girl. All of these acts took place between the 3d and 7th of October. Upon these facts the trial court instructed the jury that they might consider the acts of Dale only if they found a conspiracy existed, and that, if they did not find such conspiracy, the actions of Dale should be disregarded. We believe that testimony was properly ad-

mitted and that the instructions of the court were proper. All of the acts were in furtherance of the offense and part of the *res gestæ*. The statements of Dale not so related to the offense, and which were condemned by this court upon the first appeal, were not offered upon this trial. For a full discussion of this subject, see the famous Anarchist Case, Spies v. People, 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 6 Am. Crim. Rep. 570, 3 Am. St. Rep. 320 (note at page 478).

(3) The next group of assignments of error relates to two hypothetical questions asked of the expert Dr. White. In paragraph one we have held that the testimony of Dr. Engstad, given upon the first trial, was properly received at the second trial. After this question had been received Dr. White was asked a very lengthy hypothetical question based upon the assumption that all of the state's evidence, including Dr. Engstad's, was true. The material parts of Dr. Engstad's testimony were that the girl had called upon him October 1st, and had been by him examined with the result that he found nothing wrong with her lungs, heart, or other organs, and that she appeared to him to be in excellent health. He had seen her a day or two later upon the street with a satchel going towards the Great Northern depot, and she seemed in good health. He also testified that she had no temperature upon the first examination, and that she was pregnant. All of these facts were assumed as correct in the question asked Dr. White, and were well within the rules. Then Dr. White was asked, "In your opinion, assuming these facts to be true, what was the cause of death?" Of course, the testimony of all the witnesses in the case was included in the first question and also in the second. As we have already held the admission of Dr. Engstad's testimony proper, the principal ground of complaint is disposed of. There was plenty of evidence to justify the questions, and the competency of Dr. White is conceded. Therefore there was no error in allowing him to answer. To be true Dr. Engstad admitted the possibility that the girl might have been carrying the germs that caused her death at the time of his examination, but he says that it was a *possibility* only, and not a probability. Until mankind is much farther along upon the road to learning, it will not be safe to disregard the testimony of a witness because he admits the possibility of an error in his judgment.

(4) This brings us to the final group of assignments. It relates

to alleged misconduct of an attorney who was assisting the state's attorney during the trial. This attorney, Mr. Sinkler, in closing his remarks to the jury, used language of which defendant now complains. It will not be necessary to set much of it out in this opinion, but the gist of the statement is as follows: "A moloch who kills unborn children for the sake of the almighty dollar," "professional abortionist," etc. It is claimed that these statements are not supported by evidence and prejudicial to the defendant. The conduct of the state's attorney and his assistants should be dignified, truthful, and honorable, and yet vigorous and convincing. It is hard to lay down fast rules to cover every possibility that may arise. The state's attorney may be driven to make indiscreet statements by taunts of opposing counsel, or he may be induced to make passionate remarks by some action of the defendant himself. In the case at bar it appears from Mr. Sinkler's remarks that the defendant had smiled at some of his statements made to the jury. In the heat of combat something may be said or done that needs correction. The trial court is there for that purpose. If the state's attorney makes remarks such as the above, the defendant must make complaint at once, or the trial court may conclude that they are not objectionable. In the case at bar no complaint was made to the trial court, because, as counsel states, "he did not care to interfere with the argument." Some attorneys take swift advantage of the sympathy of the jury for anyone in trouble, and use the remarks of the state's attorney as a basis for a "fair-play" appeal to the jury. In the absence of complaint, the court may have assumed that such was the intention of defendant's attorneys. The matter is one largely in the discretion of the trial court, who heard all of the argument, and heard and saw the possible provocation. This court in the case of State v. Knudson, 21 N. D. 562, 132 N. W. 149, has passed squarely upon this point, and we see no reason to disagree with the rules therein established. Without approving of the remarks made, we must decline to reverse the case in the absence of timely objection and a ruling by the trial court. The other assignments of error are covered by the foregoing, or are unsupported in appellant's brief. Finding no error, the judgment is affirmed.

Goss, J. disqualified. NUCHOLS, District Judge, sitting in his stead.

## On Rehearing.

PER CURIAM.   On the former appeal of this case we hold that a certain ruling excluding an answer to a question propounded by the defendant's counsel to the witness, Dr. Engstad, on cross-examination, constituted error.   This holding was made toward the end of the opinion, and after other controlling questions had been decided in defendant's favor necessitating a new trial, and was in the nature of a pronouncement upon a rule of evidence for the guidance of the lower court on the second trial.   It was unnecessary to the decision that we should have determined whether, in the light of the whole record, such ruling was prejudicial; nor was this phase of such ruling argued by counsel or considered by the court.   Moreover, the record on the former appeal gives the testimony only in the narrative form, while, on the present appeal, it is set out fully by questions and answers.   Our attention was not called to this fact by counsel.   These facts are sufficient to explain our oversight on the former appeal, if, indeed, it can correctly be contended that we there in effect held such error prejudicial.   Notwithstanding these facts, and conceding, for the sake of argument, that a fair interpretation of our former decision leads to the conclusion that we held such ruling to be prejudicial error, it does not follow as a necessary conclusion that such ruling is, on this appeal, controlling and decisive, or that it was controlling and decisive in the trial court under the doctrine of the law of the case upon the question here presented as to whether a sufficient preliminary foundation had been laid for the introduction of the former testimony of Dr. Engstad, by showing that, as a matter of fact, a full and fair opportunity was afforded the defendant for cross-examination of such witness at the former trial.   The question thus decided on the former appeal is not the *same* question confronting us on this appeal, and the doctrine of the law of the case so earnestly invoked by appellant's counsel is not applicable.   The question thus before us on the former appeal involved the correctness of a ruling upon a certain objection to a specific interrogatory propounded to the witness Engstad, and, if found to be erroneous, then, perhaps, whether such ruling was prejudicial to the defendant.   The precise question confronting us on this appeal not only was not raised, but it could not have been raised, on the former

appeal. It involves the question, as before stated, as to whether, as a matter of fact as disclosed by the entire record, the defendant was accorded a full and fair opportunity to cross-examine such witness. While the questions are, in a sense, closely related, we are clear that there is nothing in the former decision on this point which can correctly be said to be binding on us on the present appeal.

In the light of the record clearly disclosing that the subject embraced in the question thus propounded to Dr. Engstad was in substance and effect fully covered by other questions and answers not objected to, we are forced to conclude that a full and fair opportunity was in fact accorded defendant for cross-examination, and consequently a sufficient foundation in this respect was laid for the introduction of such testimony on the last trial.

The question now attempted for the first time to be raised in this court, that a proper foundation was not laid for the introduction of Engstad's testimony by showing his absence from the jurisdiction of the court, will not be considered, as such question comes too late. The judgment is affirmed.