Syllabus.

## TERRITORY *v.* JAMES P. CURRAN.

## No. 939.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

SUBMITTED JULY 6, 1916.                    DECIDED AUGUST 4, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

CONSTITUTIONAL LAW—*sixth amendment—confrontation by witnesses in criminal cases.*

The constitutional right of confrontation is satisfied when the advantage of seeing the witness face to face and the opportunity to cross-examine him has once been accorded the accused.

CRIMINAL LAW—*evidence—testimony of absent witness.*

The absence from the jurisdiction of a witness for the prosecution, though only temporary, is a ground for the admission of his testimony given at a former trial of the case when the defendant has opposed a postponement of the case and insisted upon an immediate trial.

OPINION OF THE COURT BY ROBERTSON, C.J.

(Quarles, J., dissenting.)

This case comes to this court upon the defendant's bill of exceptions. The defendant has no counsel, and no brief has been filed on his behalf. The record has nevertheless been examined and the only exception which seems to require notice is that which was taken to the admission in evidence of the testimony of one Derda who testified as a witness on a prior trial of the case but who was absent from the Territory at the time of the trial which resulted in the conviction of the defendant.

The defendant was charged with having committed the offense of assault and battery, and, the jury having disagreed, the case was called up again for trial on the 22d

day of November, 1915. At the outset counsel for the defendant interposed an objection to certain jurors who had been summoned under a special venire. The court suggested that the case should be postponed for two weeks, upon the idea, apparently, that the ground of objection would in the meantime have been removed. After some discussion the suggestion was accepted by counsel. The prosecuting attorney then stated that as the trial was to be postponed he would ask that it stand over until the 15th of December for the reason that an important witness for the prosecution (meaning Derda) who was expected to return (to Honolulu) on November 13 would not return until December 14, by a transport due to arrive on that date. To this, defendant's counsel objected, stating that the prosecution had already been granted a continuance because of the absence of that witness. The upshot of the discussion which followed was a mutual agreement that the trial should be proceeded with at once. The trial having been commenced, the prosecution put in testimony showing that the witness Derda is an enlisted man in the United States army stationed at Honolulu; that on account of the illness of his wife he was granted a furlough for the period of eighty-three days and left for San Francisco on the transport "Logan" on September 4, 1915; that the furlough would expire on December 4, and that he was expected to reach Honolulu on the transport which would arrive on the 13th or 14th of December; and that he was not in the Territory at the time of the trial. It further appeared that the prosecuting officers knew that the witness was intending to leave the Territory on furlough and took no steps to subpoena him or have him detained as a witness. The court reporter was then called and testified to having recorded the testimony of Derda as given on the previous trial of the case, and that he had correctly transcribed his shorthand notes. The transcript of the testimony of the witness

was then offered in evidence and admitted over the objection of the defendant. The grounds of objection were stated by counsel to be that the evidence was in violation of the provision of the Sixth Amendment which entitled the defendant to be confronted with the witnesses against him; that the witness in question was not shown to be permanently absent from the Territory; and that the prosecution was negligent in not seeking to keep the witness in the jurisdiction, and in not making application for a continuance of the case until his return. When the evidence was offered the court again suggested that the case might be postponed, saying "The court is well aware that the defense has had its own choice in this matter, from the time the matter was called for trial yesterday, they could proceed or take a continuance, and they have that same choice right now." The defendant did not accept the suggestion that a continuance be taken, but elected to insist on his right to a speedy trial and to stand upon the exception taken to the admission of the evidence.

We think the question is to be decided without reference to the statute (R. L. 1915, Sec. 3821) relating to the admissibility of depositions "taken in the preliminary or other investigation of any charge" etc., which, in our opinion, does not apply to this case.

The constitutional right of the accused in a criminal case to be confronted with the witnesses against him is in the nature of a privilege which he may waive. *Diaz* v. *United States,* 223 U. S. 442, 450; *Republic* v. *Yamane,* 12 Haw. 189, 221. And where it has not been waived the requirement is satisfied when the opportunity has once been accorded and the witness has since become unavailable. "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used

against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. * * * The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Mattox* v. *United States,* 156 U. S. 237, 242, 244. Though the principle is perfectly well established there is considerable conflict in the decided cases as to its application under various circumstances. The matter of its application in a case like this is an open question in this jurisdiction, and we are at liberty, within the principles of the common law as ascertained from the English and American decisions, to adopt the view which according to reason and authority would better promote justice. It has been held that former testimony of a witness is admissible on a second trial of the case only where the witness has died. But the overwhelming weight of authority is against that narrow view. The principle of the common law under which the secondary evidence is admitted is based upon the unavailability of the witness at the time of the trial and the necessity of the case. 2 Wigmore, Ev., Sec. 1402. The immediate point in the case at bar is whether the former testimony of an absent witness is admissible where it appears that the witness is only temporarily absent and will probably return to the jurisdiction. It has been held in a number of cases that the evidence is not admissible unless it be shown that the witness is absent permanently or for an indefinite length of time. The text-writers generally state the rule broadly that absence of a witness from the jurisdiction is a

ground for the admission of his former testimony. 1 Starkie's Evidence, 310; 1 Greenleaf Ev., Sec. 163; 2 Wigmore, Ev., Sec. 1402; 12 Cyc. 544; 8 R. C. L. 88; 10 R. C. L. 966. "In fact, every text writer of any note, or that has been recognized by the courts of last resort, so far as we have been able to ascertain, adheres to that line of decisions which holds that the testimony of a deceased witness, or a witness beyond the jurisdiction of the court, may be reproduced where the accused has once been confronted by the witness." *Robertson* v. *State*, 63 Tex. Cr. 216, 224. "At common law, the testimony of a witness given upon a former trial of a cause between the same parties was admissible for or against either party, upon showing that he was dead or without the jurisdiction of the court. Such was the undoubted rule of evidence at common law, and before the adoption of the codes it was sanctioned and employed in this state." *People* v. *Bird*, 132 Cal. 261, 263. In the 16th edition of Greenleaf which was edited by Professor Wigmore a new section (Sec. 163g) was inserted wherein it is stated that "mere absence, however, may not be sufficient, and it is usually said that a residence or an absence for a prolonged or uncertain time is necessary." But the professor in his later work says, "The absence, it is sometimes said, must be by way of *residence,* not merely a temporary sojourn, because otherwise the trial could be postponed until his return. This, however, seems too strict a rule; by his absence he is at the time actually unavailable, no matter when he is to return; and, if the witness is not of such importance as to require a postponement until his return, still more if the opponent does not desire or consent to a postponement, there is no reason for distinguishing between temporary and permanent absence." 2 Wigmore, Ev., Sec. 1404. The force of the eminent author's statement is evident, and its application to the circumstances of the case at bar particularly pointed. See also the case of *People*

v. *Droste,* 160 Mich. 66, where the former testimony of a witness who was ill was held properly admitted, and the court pointed out that the defendant did not ask for a continuance and did not assent to the suggestion of the court that the witness be examined at her home. Indeed the fact that the unavailability of a witness is of a temporary nature would seem to have more to do with the matter of postponing the trial of the case than with the admissibility of the evidence in the event that the trial has been proceeded with. And so in a great many cases the former testimony of an absent witness has been admitted without any showing that the absence was permanent or for an indefinite time. See *People* v. *Devine,* 46 Cal. 45; *State* v. *Walton,* 53 Ore. 557, 563; *Ter.* v. *Evans,* 2 Idaho 627; *Warren* v. *State,* 6 Okl. Cr. 1, 11; *Poe* v. *State,* 129 S. W. (Ark.) 292; *Meldrum* v. *State,* 146 Pac. (Wyo.) 596; *State* v. *Moeller,* 24 N. D. 165; *State* v. *Heffernan,* 24 S. D. 1. "If the testimony of a deceased witness given at a former trial of the case against the accused is admissible against him at a second trial of the same case, for the reasons above noticed we can see no reason why the testimony of a witness given at a former trial is not admissible against the accused at a second trial when such witness is beyond the jurisdiction of the court, because in that instance it is impossible for the prosecution to produce such witness in court by process." *Henwood* v. *People,* 57 Colo. 544, 557. "Logically there seems no middle ground. Unless the requirement of the constitution is complied with, the death of a witness should not permit the use of his testimony. If it is complied with, the evidence should be admited, unless open to some objection other than the constitutional one. Accordingly, as already stated, in a large number of cases it is held that the absence of the witness from the jurisdiction of the court, and the consequent impossibility of compelling his attendance, justifies the use of his former testimony. While

there are also many decisions to the contrary, the recent tendency seems to favor the rule stated." *State* v. *Nelson,* 68 Kan. 566, 570. "It is obvious that this reasoning is quite as forceful and as applicable in a case where the witness is out of the state, and therefore beyond the reach of a subpoena. The state is quite as helpless in procuring his attendance as though he were dead or beyond the sea, and the defendant has had precisely the same advantage in the way of confrontation." *State* v. *Brown,* 152 Ia. 427, 435. And in those states where the former testimony of an absent witness is admitted under statutory provisions the courts, in sustaining the validity of the legislation, proceed upon the theory that the constitutional provision as to confrontation is declaratory and that the evidence was admissible at common law. See *State* v. *King,* 24 Utah 482; *State* v. *Meyers,* 59 Ore. 537; *People* v. *Elliott,* 172 N. Y. 146. Furthermore it is quite generally held that the evidence is admissible where a witness cannot be found after diligent search without any further showing that he has quit the jurisdiction, or that he has left the state permanently. See *Putnal* v. *State,* 47 So. (Fla.) 864; *Pope* v. *State,* 63 So. (Ala.) 71; 1 Greenleaf Ev., Sec. 163. In the analogous case of the absence of a witness on account of illness there is a conflict of authority on the point whether it must be shown that the illness is of a permanent character. In the well considered case of *People* v. *Droste, supra,* the court said, "And upon principle, we are unable to appreciate any good reason why the people or respondent should have the benefit of such evidence in cases where the witness is dead or permanently ill, and be denied that benefit when the witness is only temporarily ill. In all three cases the important fact is identical—the witness cannot be produced to testify before the jury." 160 Mich. 76.

In 1 Greenleaf Ev. (16th ed.) Sec. 163g, it is said the application of the rule in cases where the witness is ill or

cannot be found, should be, and usually is, left to the discretion of the trial court. And see *Thornton* v. *Britton,* 144 Pa. St. 126, 131; *Harwell* v. *State,* 68 So. (Ala.) 500; *King* v. *McCarthy,* 54 Minn. 190, 195; *Putnal* v. *State, supra.* The reason of the thing applies also in a case where, as here, the witness is temporarily absent from the jurisdiction. Whether or not a temporary absence will furnish sufficient ground for the admission of the former testimony may well be made to depend upon the circumstances of the case. If the prosecution were insisting upon a trial in the absence of the former witness apparently on the theory that it would prefer to have the testimony read to the jury rather than have the witness present, and the defendant was desirous of a continuance till the return of the witness upon the theory perhaps that it would be an advantage to have the jury see and hear witnesses, or, in order that the witness might be more thoroughly cross-examined than he had been at the former trial, the secondary evidence might well be excluded. On the other hand, if the defendant has successfully insisted on an immediate trial and has opposed a reasonable continuance pending the return of the witness, the case is for all practical purposes in the position it would have been in if the witness were permanently out of the reach of the court, or dead. In the case at bar the defendant objected to a continuance till the witness returned, when asked for by the prosecution, and twice refused to accede to the suggestion of the court that the trial should be postponed. In admitting the evidence the trial court exercised its discretion wisely. In now endeavoring to obtain a retrial the defendant is, in effect, asking for what he refused in the court below, namely, a trial with the witness present. There is little in his position to recommend it.

In the case of *Motes* v. *United States,* 178 U. S. 458, 474, where a witness for the government who had been in custody was allowed to escape, though it was not shown that

he had gone beyond the jurisdiction of the court, the admission of his former testimony was held to be error. The court held that former testimony in a criminal case should not be admitted "when it does not appear that the witness was absent by the suggestion, connivance or procurement of the accused, but does appear that his absence was due to the negligence of the prosecution." In the case at bar we think that the prosecution was not negligent. True, it was known that the witness intended to leave the Territory. But he was an enlisted man in the forces of the United States stationed in this Territory who, because of the illness of his wife, was going to the mainland on a limited furlough, and was under the obligation of the service to return upon its expiration. Under the circumstances we think the prosecution was not obliged to detain the man by subpoena or under the statute relating to the detention of witnesses in criminal cases. If the case could not be postponed until the return of the witness justice required that the testimony given by the witness at the former trial should be admitted.

The evidence in the case was conflicting, but the jury, of course, were the judges of the credibility of the witnesses and the weight of their testimony. There was ample evidence to sustain the verdict.

The exceptions are overruled.

*A. M. Cristy*, First Deputy City and County Attorney, for the Territory.

### DISSENTING OPINION OF QUARLES, J.

I am unable to concur in the conclusion reached by the majority, but do concur in the conclusion of the majority that section 3821 R. L., relating to the admissibility of depositions, does not apply to the case at bar.

In my opinion the evidence of the witness Derda was not admissible. All of the authorities agree that the evidence

given by a witness at a former trial is only admissible as secondary evidence in cases of necessity. The evidence of said witness was material, and to show its materiality I shall briefly refer to the principal points in the evidence as shown by the record. The vital question in the case is whether or not the defendant struck the prosecuting witness Terry a blow and thereby assaulted and knocked him down. On this point five witnesses, besides the witness Derda, testified to having seen the assault or blow struck. The prosecuting witness Terry testified that he did not see the party who struck him—did not know who struck him. The witness Yarrick, who was standing immediately in front of Terry when the latter was struck, facing Terry and talking to him, did not see the party who struck the blow. On behalf of the prosecution the witness, Hiram Kerr, testified that he saw the defendant strike Terry and that defendant hit Terry on the back of his head and the latter fell on his back. The statement of itself is inconsistent and improbable, and the witness Kerr, on cross-examination, admitted having changed his evidence in several material matters from what it was at the former trial. The absent witness testified at the former trial that he saw the defendant strike the prosecuting witness Terry, but the evidence shows that he was a stranger to the defendant, as does that of nearly all of the witnesses. On the other hand the defendant testified positively that he did not strike the prosecuting witness Terry and was not near him at the time he was struck. Richard F. Moorhead, Emmil Wagner, Jack Hill and Matthew M. Kearney, each and all testified that they saw the prosecuting witness Terry when he was struck and knocked down; that the defendant did not strike Terry; that Terry was struck by a tall slender man who walked down Hotel street Ewa way a short distance and then crossed over Hotel street to the alley leading to the Bijou theater. The appearance and build of this man, be-

ing tall and slender, was in striking contrast with that of the defendant, who was heavy and stockily built and not so tall. The overwhelming weight of the testimony is to the effect that the defendant did not commit the assault charged against him, yet under the rule established by appellate courts that a verdict in a criminal case will not be reversed when the evidence is conflicting and there is a scintilla of evidence supporting the verdict, harsh as the rule appears, prevents a reversal on the ground that the verdict is contrary to the weight of the evidence. These observations show the importance of the evidence of the witness Derda against the defendant, and, if that evidence was improperly admitted, an affirmance of the judgment upon the verdict could not be had upon the idea that the jury would have found the same verdict even if the evidence of Derda had not been admitted. If wrongfully admitted the admission of Derda's evidence was clearly prejudicial error which of itself necessitates a reversal and a new trial.

The position taken in the majority opinion that forsooth the defendant made an objection to the manner in which the jury was being selected and the trial judge then offered to continue the case two weeks and the prosecution asked that it go over for a little longer time or until after the 13th of December, to which the defendant failed to agree, is not sufficient excuse upon which to predicate the admission of evidence not otherwise admissible. Nor was the suggestion made by the trial judge during the trial, that the case could be continued until Derda's return and the failure of the defendant to agree thereto, sufficient upon which to predicate the admission of evidence not otherwise admissible. To my mind the idea seems novel that it is the duty of the defendant to prepare or help to prepare the case against himself. Such may be correct practice, but to the writer, if it be, it is certainly something heretofore unknown to him.

A careful perusal of the record, which is very lengthy,

consisting of more than 400 typewritten pages, convinces me that many of the rulings of the court in admitting evidence over the objections of the defendant, and to which some of the exceptions go, were erroneous. A number of the exceptions go to the admission of evidence given by the prosecuting witness Terry and. the witness Alfred Mia, tracing the actions and movements of the prosecuting witness from the time that he reached Honolulu from Pearl Harbor at 4:55 P.M. on the day of the assault up to the time of the assault. Such evidence to my mind was immaterial. But the prosecution connected it with statements made by these two witnesses showing that at a number of times during the evening they saw the defendant Curran, and their evidence had a tendency to show that Curran was shadowing the prosecuting witness. Their statements, however, are flatly contradicted by Curran and by the witnesses Max Lange and Walter A. Wood, showing that the defendant was at the Criterion bar at the corner of Hotel and Bethel streets from 4 to 6 P. M. on the said day, while the witness William Armstead and the defendant testified that the defendant was at said Criterion bar from a little after 4 P. M. to 8 P. M. on the said day. On this particular point again we find the weight of the evidence decidedly against the contention of the prosecution and in favor of the defendant.

This brings us to the principal question in this case. We have no statute making the evidence of an absent witness, given at a former trial, admissible at a later trial, and hence if admissible it must be so under the common law which is in full force in this jurisdiction where a rule of the common law relating to substantive right is binding upon this court until changed by statute (*Macaulay* v. *Schurmann*, 22 Haw. 140). All of the authorities agree that if the evidence of a witness given at a former trial in the same case be admitted on some rule of the common law or statute making it admissible, that the constitutional right of the defendant

to confront and cross-examine the witness is not violated he having had the opportunity of confrontation and cross-examination at the former trial. Hence the question before us is to be decided entirely outside of the constitutional question. I shall briefly review some of the authorities, English and American, touching the question under consideration.

"It is an incontrovertible rule, that when the witness himself may be produced his deposition cannot be read, for it is not the best evidence. But the deposition of a witness may be read not only where it appears that the witness is actually dead, but in all cases when he is dead for all purposes of evidence; as where diligent search has been made for the witness, and he cannot be found, where he resides in a place beyond the jurisdiction of the court, or where he has become lunatic or attainted" (1 Starkie's Evidence 310, 311).

In Buller's Law of Nisi Prius 242, it is said: "And by 1 & 2 P. & M. c. 13 and 2 & 3 P. & M. c. 10 justices of the peace shall examine of persons brought before them for felony, and of those who brought them, and certify such examination to the next gaol delivery; but the examination of the prisoner shall be without oath, and the others upon oath, and these examinations shall be read against the offender upon an indictment, if the witness be dead."

It was a rule of the common law that if a witness be dead or be diligently sought for and cannot be found (the same as dead to the party desiring his evidence) his deposition, taken in a case involving the same matters and between the same parties, is admissible. Godbolt 326; Bull. N. P. 239.

"Evidence given by a witness in a previous action is relevant for the purpose of proving the matter stated in a subsequent proceeding, or in a later stage of the same proceeding, when the witness is dead, or is mad, or so ill that he will probably never be able to travel, or is kept out of the way by the adverse party, or in civil, but not, it seems, in criminal cases, is out of the jurisdiction of the court, or,

perhaps, in civil, but not in criminal, cases when he cannot be found" (Stephen's Evidence, Art. 32).

Stephen cites as supporting the rule *Rex* v. *Hogg,* 6 C. & P. 176; *Reg.* v. *Scaife,* 5 Cox Cr. 243, 244; *Fry* v. *Wood,* 1 Atk. 444. To the same effect is the decision in *Lord Morly's case* decided in the year 1866 and reported in Kel. 53, 55, and the decision in *Reg.* v. *Hagan,* decided in 1837, reported in 8 C. & P. 167.

In *Reg.* v. *Scaife, supra,* Scaife was indicted with two others on the charge of larceny. One of the defendants, Smith, it appears, contrived to get a witness, one Ann Garnett, who had been examined before the magistrate upon the committal of the prisoners, to absent herself from the trial. Her deposition was admitted against all of the defendants. The court of Queen's Bench in 1851 reversed the judgment as against Scaife and his codefendant, other than Smith, upon the ground that the deposition of said Ann Garnett was improperly admitted in evidence. Lord Campbell, chief justice, in commenting upon the admission of the deposition, said: "Then, is such a document admissible against a prisoner without proof either that the deponent is dead, or that he is kept away by the contrivance of the prisoner, upon the bare ground that the witness is absent and cannot be found? No case has gone so far hitherto, and I should be sorry that we should now make a precedent, which might have the effect of depriving the accused person of the advantage of having the witnesses against him examined personally in the presence of the jury, with full liberty for the accused to examine upon all matters which may be material to his defense." In the same case Coleridge, J., said: "Before the recent statute (11 & 12 Vict. c. 42), the deposition of an absent witness was only admissible in case of the death of the witness, or his absence being procured by the prisoner. All other cases were in one category, and the depositions of absent witnesses were in-

admissible. The recent statute (11 & 12 Vict. c. 42) took the case of sickness such as to incapacitate the witness from traveling out of that category, and classed it with the two other excepted cases." In the same case Erle, J., said: "As regards the two prisoners Scaife and Rooke, the admissibility of this document rests only upon the absence of the witness. There is no valid authority that that is sufficient to make a deposition of this kind receivable in evidence."

Phillipps on Evidence, pp. 368, 369, says: "Before the statutes of Philip and Mary, a deposition taken before a justice of the county, where a felony was committed, would not have been evidence, even though the witness had died, or was unable to travel."

"The deposition of a witness, taken upon oath, in the presence of a prisoner, who has been brought before the magistrate on a charge of felony, may be given in evidence on the trial of an indictment for the same felony, if it be proved on oath, to the satisfaction of the court, that the informant is dead, or prevented by sickness from attending, or that he is kept away by the means and contrivance of the prisoner; provided also, that the deposition, offered in evidence, is proved to be the same as was sworn before the justice, without any alteration."

The common law rule as to admitting the deposition of an absent witness, as amended by the Stat. Geo. 4, c. 65, is stated in 2 Starkie's Ev., 383, as to preliminary proof, laying the predicate therefor, to be as follows:

"It must also be previously proved that the witness is dead; or that he has been kept away by the practices of the prisoner, or, as has been said, that he is unable to travel. It seems, however, to be very doubtful whether the mere casual and temporary inability of the witness to attend in a criminal case, be a sufficient ground for admitting his deposition, which affords evidence of a nature much less satisfactory than the testimony of a witness examined *viva voce* in court, and which might be procured at another time if the trial were postponed." To the same effect is the text in 3 Russell, Cr. 466.

I.have been unable to find any text writer or any English decision to the effect that prior to the colonization of America proof of the temporary absence of a witness furnished a sufficient predicate at common law for introducing his evidence given at a former trial, but the English decisions are all to the contrary under the common law, and this is especially so in criminal cases. Not even by statutory amendments have the exceptions to the rule against introducing such evidence been extended in England so as to admit such evidence on the bare showing of temporary absence. Some of the American States have adopted statutes broad enough to admit such evidence and to support the rule adopted by the trial court, and sanctioned in the majority opinion, that the evidence of said witness Derda was admissible on showing that he was temporarily absent from this jurisdiction and soon to return. Our legislature might have changed the common law rule in this regard by making the evidence of a witness given at a former trial and reported by the official stenographer admissible in evidence at a succeeding trial when the presence of the witness at a succeeding trial could not for any reason be obtained, but it has not done so. Many States have enacted such a statute, among others the following: California (*Hicks* v. *Lovell,* 64 Cal. 14, 22; *People* v. *Plyler,* 126 Cal. 379); Georgia (*Eagle etc. Co.* v. *Welch,* 61 Ga. 444, 448); Idaho (*Territory* v. *Evans,* 2 Idaho 627, 632); Kansas (*New* v. *Smith,* 94 Kan. 6); Kentucky (*Sievers-Carson Hardware Co.* v. *Curd,* 71 S. W. 506); Maine (*Edgerley* v. *Appleyard,* 86 Atl. 244; *State* v. *Frederic,* 69 Me. 400); Missouri (*Ratliff* v. *Quincy, O. & K. C. R. Co.,* 131 Mo. App. 118); Montana (*Mette & Kanne Dis. Co.,* v. *Lowrey,* 39 Mont. 124, 132); New York (*Fortunato* v. *City of New York,* 77 N. Y. S. 575; *People* v. *Elliott,* 172 N. Y. 146; *Shaw* v. *N. Y. Elevated R. Co.,* 187 N. Y. 186; concurring opinion of Follet, J., in *Mut. Life Ins. Co.* v. *Anthony,*

4 N. Y. S. 501); Oregon (*Beard* v. *Royal Neighbors of America,* 60 Ore. 41, 44); Pennsylvania (*Commonwealth* v. *Cleary,* 148 Pa. St. 26); Utah (*State* v. *Hillstrom,* 150 Pac. 935; *State* v. *King,* 24 Utah 482); Washington (*Knutson* v. *Moe Bros.,* 72 Wash. 290, 130 Pac. 347); West Virginia (*Bare* v. *Victoria Coal & Coke Co.,* 80 S. E. 941).

Colorado has a provision in its constitution authorizing the taking of depositions and their use in criminal cases. In *Ryan* v. *People,* 21 Colo. 119, it was held that the provision being a modification of the general rule that upon final trial the accused must be confronted with the witness against him all of the requirements as to the taking of such depositions must be strictly complied with unless waived by the accused. Decisions from the States adopting such statutes are not authority here where the question is whether or not the admission of Derda's evidence is authorized at the common law. 1 Greenleaf Ev., Sec. 163, is often cited as sustaining the admissibility of evidence when the witness cannot be found. That authority and decisions holding the same thing are not authority authorizing the admission of Derda's evidence for the reason that Derda could be found; his whereabouts were known, and his return to this jurisdiction was to take place within a few days after the commencement of the trial. There are numerous decisions holding that under such circumstances the party desiring his evidence should move for a postponement of the trial. The bare suggestion that a trial be postponed is not an application for a postponement. The matter of postponing a trial is largely in the discretion of the trial court, as has been held by this court (*Waldeyer* v. *Wailuku Sug. Co.,* 19 Haw. 245), and, as heretofore suggested, a mere oral request by the prosecuting attorney, or a suggestion by the court, although not agreed to by the defendant, does not waive any right as to postponement or as to the admissibility of evidence if the trial proceeds. An

application for a postponement must be made on a proper showing. The learned author in 1 Greenleaf Ev., Sec. 163, cites, as sustaining the proposition that if a witness who testified at a former trial cannot be found his evidence is admissible, the following: Bull. N. P. 239, 242; Starkie's Ev., 264; 12 Vin. Abr. 107, A, b. 31; Godb. 326, and *Rex.* v. *Eriswell,* 3 T. R. 707, 721. None of the authorities cited sustains the rule in a criminal case in the absence of a statute. Professor Wigmore, in his edition of Greenleaf on Evidence (Vol. 1, Sec. 163f, 16 ed.), says, *inter alia:* "So far as confrontation is concerned, then, the only question is whether it can be had under the circumstances of the case; if it can be, it must be; if not, it may be dispensed with;" and (in Sec. 163g), "Mere absence, however, may not be sufficient, and it is usually said that a residence or an absence for a prolonged or uncertain time is necessary." It does not seem correct or logical to say that a witness whose whereabouts is known and whose presence at the place of trial is to take place within a few days makes it impossible to have the witness in person at the trial. Consequently, under such circumstances, the rule laid down by Professor Wigmore in Sec. 163g, *supra,* does not sustain the rule adopted in the majority opinion. Professor Wigmore cites in a note to Sec. 163g, *supra,* to sustain the proposition that temporary absence is not sufficient to authorize the admission of evidence given at a former trial, the following decisions: *Fry* v. *Wood,* 1 Atk. 445; *Roe* v. *Jones,* 3 Low. Can. 58; *Sutor* v. *McLean,* 18 U. C. Q. B. 492; *Mims* v. *Sturtevant,* 36 Ala. 64. In *Fry* v. *Wood, supra,* the parties agreed that a deposition taken in a chancery case could be used in a case at law between the same parties, the witness being dead or sick or out of the Kingdom. A long line of Alabama cases, including *Mims* v. *Sturtevant, supra,* establish the rule beyond question that the temporary absence of a witness is not a sufficient predicate to authorize the

introduction of his evidence given at a former trial. In 2 Wigmore Ev., Sec. 1402, it is said, *inter alia*:

"The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity,—*i.e.* the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be: Is his testimony in court unavailable? We may of course distinguish further between testimony unavailable by any means whatever and testimony unavailable without serious inconvenience. The common law rulings certainly stopped at unavailability of the former sort; conditions of the latter sort rest wholly on statutory sanction."

A statute in Georgia authorizes the introduction of evidence given by a witness at a former trial when his presence is unavailable (*Atlanta & C. A. R. Co.* v. *Gravitt*, 20 S. E.–Ga.–550).

Before referring to other decisions I will briefly review the principal authorities relied on to support the majority conclusion in this case. In *People* v. *Bird*, 132 Cal. 261, the witness was dead. What the court said as to the rule at common law when a witness was out of the jurisdiction was purely *obiter*, as a statute of California permitted the use of evidence given at a former trial under the circumstances. In *People* v. *Droste*, 160 Mich. 66, the absent witness was sick at home and could not attend. The defendant had refused to go to her home to be present at the taking of the deposition and have the opportunity to cross-examine. In *State* v. *Walton*, 53 Ore. 557, one witness was dead, the other beyond the jurisdiction of the court—whether permanently or temporarily does not appear. The court only considered the constitutional question of confrontation and cross-examination. This decision also was under a statute making the evidence given at a former trial admissible. In *State* v. *Moeller*, 24 N. D. 165, the witness was shown to be

out of the State, but whether permanently or temporarily did not appear. The principal objection to the introduction of his evidence given at a former trial was that accused was denied the right at the former trial to fully and fairly cross-examine the witness. This contention was overruled. As I read that case it is not authority for the introduction of the evidence given at a former trial by a witness temporarily out of the jurisdiction. In *State* v. *Heffernan,* 24 S. D. 1, it does not appear whether the witness was permanently or temporarily absent. The case was discussed and appears to have been decided principally upon the constitutional question of confrontation and cross-examination. In *State* v. *Brown,* 152 Iowa 427, 432, the evidence of a witness at the former trial was admitted on a showing that the witness was out of the State and in another State. No showing was made as to whether his absence was permanent or temporary. The deposition was admitted under a provision of the Iowa code. In *Henwood* v. *People,* 57 Colo. 544, the evidence given by two absent witnesses at a former trial, both of whom had left the State and continued out of its jurisdiction, was admitted without objection on the part of the defendant. No showing appears to have been made as to whether the absence of the witnesses was permanent or temporary. The case was decided mainly upon the constitutional question. In *Warren* v. *State,* 6 Okl. Cr. 1, 5, the absent witness had left the State and gone to another State—whether permanently or temporarily does not appear. The case of *Territory* v. *Evans,* 2 Idaho 627, was decided upon a statute authorizing the use of the evidence of the absent witness given at a former trial. This case, although cited in the majority opinion and in a number of decisions as sustaining the rule contended for on behalf of the prosecution, was expressly overruled by the supreme court of Idaho in *State* v. *Potter,* 6 Idaho 584. In *King* v. *McCarthy,* 54 Minn. 190, it appears that the absent wit-

ness had left the State and located in St. Louis, Missouri, and was there engaged in business. The court in that case (p. 195) said: "Anything which will reasonably satisfy the court that the absent witness is not likely to return within the jurisdiction of the State may be admitted. See *Wyatt v. Bateman,* 7 Car. & P. 586; *Austin* v. *Rumsey,* 2 Car. & K. 736; also *Prince* v. *Blackburn,* 2 East 250." The cases cited in the quotation from *King* v. *McCarthy* were cases involving the discretion of the trial court in admitting evidence of the handwriting of an attesting witness to a deed or other instrument when the witness is absent from the jurisdiction. In *Thornton* v. *Britton,* 144 Pa. St. 126, the deposition of a witness eighty-seven years old, infirm and confined to his room, taken in a previous action between the same parties about the same subject-matter, was held admissible, in the discretion of the court, the intimation being that it would not be admissible in a criminal case. In *Putnal* v. *State,* 47 So. (Fla.) 864, the absent witness was of nomadic habits, in the town for only two or three days, and departing hence, whither no one knew. In *Pope* v. *State,* 63 So. (Ala.) 71, the whereabouts of the absent witness, whose evidence was offered by the defendant and refused, was unknown; the defendant had used diligent efforts to have him subpoenaed; the circumstances tended to show that he might have been the guilty party, and had fled the State. In *Harwell* v. *State,* 68 So. (Ala.) 500, diligence had been used to procure the attendance of the absent witness. In *Poe* v. *State,* 129 S. W. (Ark.) 292, it appears that the rule has been established in Arkansas, by a long line of decisions, that the evidence given at a former trial by a witness who "is dead, beyond the jurisdiction of the court, or on diligent inquiry cannot be found, may be introduced." In *Meldrum* v. *State,* 146 Pac. (Wyo.) 596, 600, the evidence given by three absent witnesses at a former trial was admitted, it

being proven that one of the witnesses was dead and the other two in California, diligence being used to procure the attendance of the witnesses. In *State* v. *McNamara,* 30 S. W. (Ark.) 762, the court cites Greenleaf Ev., Sec. 163, to show that the common law rule admitted evidence formerly given when it was proven that the witness was out of the State or could not be found, but overlooks the fact that the rule applied under the common law only to civil cases and not to criminal cases. In *Hill* v. *Winston,* 75 N. W. (Minn.) 1030, it was shown that the absent witness lived in Wisconsin when he testified at the former trial, was in Wisconsin at the time of the latter trial and then claimed his home to be in Wisconsin. His evidence at the former trial was admitted, the court saying, *inter alia:* "Anything which will reasonably tend to satisfy the court that the absent witness is not likely to return within the jurisdiction of the State may be admitted."

In addition to the long line of Alabama cases holding that the absence of a witness from the jurisdiction at the time of a second trial does not furnish a sufficient predicate for admitting his evidence given at a former trial, unless his absence from the jurisdiction is shown to be permanent, see *Berney* v. *Mitchell,* 34 N. J. L. 337; *Gerhauser* v. *N. B. & M. Ins. Co.,* 7 Nev. 174; *Vandewedge* v. *Peters,* 83 Neb. 140, 143; *State* v. *Houser,* 26 Mo. 431.

In *Kirchner* v. *Laughlin,* 5 N. M. 365, 368, it is held that the evidence of a witness at a former trial, taken by the court stenographer, is hearsay evidence in the absence of a statutory provision declaring it to be evidence. A statute in Alabama permitted the accused to take depositions in certain cases. The accused took some depositions but did not offer them in evidence; the State offered them and the trial court admitted them. This was held to be reversible error (*Anderson* v. *State,* 7 So.–Ala.–429). In *State* v. *Chambers,* 10 So. (La.) 886, the deposition of a sick witness was

taken on petition of the district attorney in the presence of the accused, no statute authorizing the taking of the deposition. The admission of the deposition was reversible error, the court saying: "The evidence against the accused must be delivered personally, and orally before the jury who are to pronounce him guilty or not guilty." A statute in New York authorized the taking of depositions in criminal cases. A deposition was taken in the presence of the accused, the witness being sworn as to the correctness of a former statement, and not sworn to answer truly such questions as should be asked. This deposition was held, in *People* v. *Restell,* 3 Hill 289, to be inadmissible in evidence under the common law which required the witness against the accused to confront him in court, the only exception to the rule recognized at common law being the dying declarations of the injured party in cases of prosecution for homicide, the court using this pertinent and forceful language: "In our zeal to punish crime great care should be taken not to make precedents which may prove dangerous to the innocent, and it should never be forgotten that even the guilty have rights which should be scrupulously regarded." In *McCrorey* v. *Garrett,* 109 Va. 645, 649, it is held that the evidence of a witness who is sick with typhoid fever and in the hospital, given at a former trial, is not admissible; that the defendant who desired his evidence should have moved for a continuance. In *St. Louis & I. M. Ry. Co.* v. *Ingram,* 176 S. W. (Ark.) 692, it is held that the evidence given by a nonresident witness at a former trial, his residence being known, is not admissible, the case in which he testified having been dismissed by the plaintiff and a new one commenced on the same cause of action. In *Robertson* v. *State,* 63 Tex. Cr. 216, where the court reversed former rulings theretofore reversed and again reaffirmed, one of the absent witnesses was proven to have died and the other proven to have returned to Italy and there established his

domicil; their evidence given at a former trial was admitted. In Indiana the rule formerly was that to admit the testimony of a witness given at a former trial it must be proven that the witness is dead at the time his evidence is offered (*Woollen* v. *Whitacre,* 91 Ind. 502; *Wabash R. Co.* v. *Miller,* 59 N. E.–Ind. App.–485). The rule was extended later so as to admit the evidence given at a former trial by a witness who is a nonresident of the State at the time of offering his former evidence (*Reichers* v. *Dammeier,* 45 Ind. App. 208).

In *Forney* v. *Hallagher,* 11 S. & R. 203, the deposition of a witness was taken by consent in arbitration proceedings. On appeal and trial *de novo,* held, that the deposition was not admissible without showing the witness was dead or without the jurisdiction. In *Giberson* v. *Mills Co.,* 41 Atl. (Pa.) 525, the evidence of a witness for the defendant was offered by the plaintiff and admitted, it being shown that the witness was out of the State. The only objection made to the introduction of his former evidence was that the plaintiff had not shown diligence to procure his attendance and had not caused subpoena to issue for the witness. In *Benson* v. *Olive,* 2 Str. 920, the English court held that a deposition taken fifty years prior to the trial, and offered without proof of the death of the witness, was inadmissible.

Some decisions not heretofore cited, which are in harmony with my views and out of harmony with the views of the majority, are as follows: *State* v. *Wing,* 66 Ohio St. 407, 415; *Collins* v. *Com.,* 12 Bush 271, 273; *State* v. *Hall,* 6 Baxt. (Tenn.) 522; *State* v. *Nelson,* 68 Kans. 566; *People* v. *Newman,* 5 Hill (N. Y.) 295; *Brogy* v. *Com.,* 10 Grat. 722; *Owens* v. *State,* 63 Miss. 450; *Bergen* v. *People,* 17 Ill. 425; *United States* v. *Angell,* 11 Fed. 34; *Finn* v. *Com.,* 5 Rand. 701; *Pittman* v. *State,* 17 S. E. (Ga.) 856.

In my opinion no decision can be found, unless it be

under modern statutes, holding that the evidence of an absent witness given at a former trial is admissible merely on proof showing that his absence is temporary and that the witness will soon return to the jurisdiction where the action is pending. To my mind the rule established by the majority in this case is without precedent, and while I am of the opinion that the legislature might change the rule of the common law so as to admit the evidence of an absent witness upon a showing that he is temporarily absent and will soon return, yet until the legislature does so I am of the opinion that the courts have no authority to adopt such a rule, which is a modification and an amendment of the common law. As was indicated by Lord Campbell, chief justice, in *Reg.* v. *Scaife, supra,* and also in *People* v. *Restell, supra,* courts should be very loath to make precedents contravening the rights of guilty parties and which may jeopardise the rights of innocent parties accused of crime.