## TERRITORY OF HAWAII *v.* LUCY MENDES GUSMAN.

### No. 2486.

Submitted April 4, 1942.          Decided April 25, 1942.

Kemp, C. J., Peters and Le Baron, JJ.

OPINION OF THE COURT BY LE BARON, J.

The defendant was convicted in the lower court, jury waived, upon an indictment charging an assault and battery upon one Joseph Gild with a weapon obviously and imminently dangerous to life and has perfected her appeal to this court.

After a most careful consideration of all the exceptions, it is apparent that only one question deserves serious discussion and will be dealt with later. The other matters raised are typified by appellant's first exception alleging error to the lower court's ruling in sustaining an objection of the Territory to a question propounded by the defense in cross-examination of one of the Territory's witnesses upon the ground that the question called for a conclusion of the witness. The pertinent part of the question was as follows: "Can you state anything else with reference to the reason for the stabbing?" The record shows that the prior testimony of the witness was factual and contained no reasons or conclusions whatsoever.

The law is well settled that a witness cannot give his conclusions, otherwise he would deprive the jury or trier of the facts of its function so to do. (*Rex* v. *Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee,* 3 Haw. 90; *Dickey* v. *State,* 102 So. 239, 20 Ala. App. 367.) Consequently, no error was committed by sustaining the prosecution's objection and it might be noted that the defense was

not precluded from a proper continuation of its cross-examination.

Exceptions 5 and 6 present the one question really meriting discussion. The question thus raised concerns the admissibility of the transcript of the evidence of Joseph Gild before the committing magistrate in the preliminary hearing on February 26, 1941. To a proposed offer of the transcript, the defense interposed the sole objection that "the hearing before the District Magistrate was merely a preliminary hearing * * * and therefore incompetent, irrelevant and immaterial." The record shows that the prosecution had, prior to the offer of the transcript, introduced into evidence without objection from the defense a subpœna which showed on its face that due and diligent search had been made for Joseph Gild but that he could not be found within the county of Hawaii and the subpœna was returned unserved on April 5, 1941. This was followed by testimony showing that Joseph Gild was a soldier in the United States Army, stationed at the Kilauea Military Camp on the island of Hawaii until March 21, 1941, when he went to Honolulu upon orders from his commanding officer to return to the mainland of the United States, leaving Honolulu on April 2, 1941, and that at the time of the commencement of the trial on April 7, 1941, he was either on the high seas en route to the mainland or had already arrived at San Francisco, California.

Preparatory to offering the transcript, the prosecution called Natsuyo Taketa, the assistant clerk and acting court reporter of the district of South Hilo, who testified that she took full and complete stenographic notes in shorthand of the sworn testimony of Gild in a preliminary hearing before the district magistrate and certified that the notes were truly and correctly transcribed. The assistant clerk also testified that at the time the testimony

was taken the defendant was present with her attorney and cross-examined Gild and it may be noted at this time that the transcript itself reflects rather an extensive cross-examination by the defendant's attorney.

When the transcript was offered in evidence, the defense made no objection other than the one previously made to the effect that because the hearing was a preliminary one, the testimony before it was inadmissible and not binding upon the defendant.

The defense for the first time upon appeal raises the question of lack of diligence on the part of the prosecutor in his attempt to produce the witness. It is obvious that the opportune time to have presented this question was in the lower court. Not having been called to the attention of the trial court, it must be deemed to have been waived in that it is clearly a matter which can be waived. (*Territory of Hawaii* v. *Wright,* 16 Haw. 123; *Ter.* v. *Rodrigues,* 30 Haw. 198; 3 C. J. 689, 692.) In addition to waiver, assuming but not deciding that the record now before us does not indicate sufficient diligence on the part of the prosecutor, nevertheless we must assume that the exercise of due diligence would have and could have been proved had a timely presentation of the matter been made.

Consequently, the only question to be considered is whether secondary evidence in the form of a duly certified transcript of testimony taken in a preliminary hearing of a material witness, who later becomes unavailable to the process of the court, is subsequently admissible against the defendant in his trial after an indictment for the same offense, when it further appears that the defendant was also present at the preliminary hearing, faced and heard the witness, and exercised through his attorney his right of cross-examination.

As part of the common law, an accused has the right to be confronted with his accuser and this right is secured

and guaranteed by the Sixth Amendment to the Constitution of the United States. This right of confrontation simply stated is merely the right of the defendant to meet the witnesses face to face which, of course, includes the right of cross-examination.

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficient in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused. * * *

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had

of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Mattox* v. *United States,* 156 U. S. 237, 242, 243, 244.

There is a conflict among the authorities as to the measure of proof required before the former testimony of a witness is admissible, *i.e.,* whether it is necessary to establish proof of the permanent unavailability of a witness, except where his absence is procured by the defendant, or whether mere proof of a temporary absence is sufficient. All of the authorities agree that a defendant's common law right and constitutional guarantee are fully satisfied where it is shown that he has once had the privilege of confronting and cross-examining the witness. As a subsidiary matter flowing from this right and guarantee, the authorities recognize the benefits accruing to the defendant in having the witness appear before the tribunal in which the defendant is being tried. Nevertheless such benefits are held to be incidental to his common law right and constitutional guarantee and are outweighed by public policy and the necessity of proceeding with the trial.

The conflict concerning the proof necessary for the admission of such secondary evidence, although at one time an open question in this jurisdiction, was definitely settled in Hawaii by this court in *Ter.* v. *Curran,* 23 Haw. 421, 424, 426, in favor of the sufficiency of proof of a temporary absence. The court says: "It has been held that former testimony of a witness is admissible on a second trial of the case only where the witness has died. But the overwhelming weight of authority is against the narrow view. The principle of the common law under which the secondary evidence is admitted is based upon the un availability of the witness at the time of the trial and the necessity of the case. * * * Indeed the fact that the unavailability of the witness is of a temporary nature would seem to have more to do with the matter of postponing

the trial of the case than with the admissibility of the evidence in the event that the trial has been proceeded with. And so in a great many cases the former testimony of an absent witness has been admitted without any showing that the absence was permanent or for an indefinite time."

In the record before us it does not appear whether the witness was absent permanently or temporarily. However, the defendant raises no point as to the nature of the witness's absence but relied in the lower court upon the sole objection that the testimony was taken in a preliminary hearing which calls our attention to the fact that in the *Curran* case the testimony was taken during a former trial rather than in a preliminary hearing.

A thorough examination of the authorities reveals that it is quite immaterial where the sworn testimony of the witness was taken, so long as it was given in a tribunal of law in which the defendant was afforded his common law and constitutional right to hear the testimony, face the witness and cross-examine him. The case of *The United States* v. *Benjamin A. Macomb*, 5 McLean 286, cited with approval in *Mattox* v. *United States, supra,* is the leading case admitting into evidence a transcript of testimony given in a preliminary hearing.

Although there was some conflict in the evidence, the lower court, sitting as the trier of facts, was the judge of the credibility of the witnesses and the weight of their testimony. The record shows ample evidence of guilt.

The exceptions are overruled.

*W. C. Achi* for defendant-appellant.

*M. Pence,* County Attorney, County of Hawaii, and Deputy Attorney General, for plaintiff-appellee.